[S. F. No. 21042.   In Bank.   Oct. 2, 1962.]

PAUL MERWYN BRITT, JR., Petitioner, v. THE SUPE-
RIOR COURT OF SANTA CLARA COUNTY, Re-
spondent; THE PEOPLE, Real Party in Interest.

Comerford, Troy & Newfield, Richard Comerford and Lee Newfield for Petitioner.

Stanley Mosk, Attorney General, Arlo E. Smith, Chief Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent and Real Party in Interest.

SCHAUER, J.—Petitioner seeks prohibition to restrain respondent superior court from proceeding to trial on an information charging him with violation of Penal Code section 288a.

Petitioner contends that he has been committed without reasonable or probable cause in that all of the evidence offered by the People at the preliminary examination was obtained by an illegal search and seizure in violation of the constitutional guarantees (U.S. Const., 4th and 14th Amends.; Cal. Const., art. I, § 19). We have concluded that, as in *Bielicki* v. *Superior Court* (1962) 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288], the challenged evidence was inadmissible and hence that the peremptory writ should issue.

The sole witness at the preliminary examination was Officer Nichols of the City of Santa Clara Police Department. He testified that on the day of the arrest he was stationed at The Emporium department store, in a space between the ceiling of the men's restroom and the next floor above. From this

vantage point he could, by means of two vents, look down into the four toilet stalls of the room. Each stall was enclosed by three walls and a door that could be fastened; the partitions between the stalls began at about 8 to 12 inches above the floor. Officer Nichols had motion picture equipment and a radio transmitter with him, and maintained one-way radio contact with other police and store security officers located in a room a short distance down the hall from the restroom.

While looking through the above described vents Officer Nichols observed petitioner and another man enter adjacent toilet stalls and commit, by means of the space beneath the partition, an act in violation of Penal Code section 288a. Officer Nichols contacted his fellow officers by radio, and took motion pictures of the activity of petitioner and the other man. It was admitted that no warrant had been issued for search of the premises.

Petitioner moved to strike all of the above related evidence on the ground that it had been obtained by an illegal search and seizure. The motion was denied, as was petitioner's subsequent motion to set aside the information on the same ground.

The issue here presented is materially similar to that decided in *Bielicki* v. *Superior Court* (1962), *supra,* 57 Cal.2d 602. The petitioners in *Bielicki* were arrested in adjoining toilet booths of a men's restroom located in an amusement park, after their activities (commission of an act in violation of Pen. Code, § 286) had been observed by a police officer stationed on the roof of the restroom and looking through a spypipe installed in the ceiling of the booths below. Prior to making that observation the officer had never seen either Bielicki or his codefendant and had no ground for believing that they were occupying the booths for anything other than a lawful purpose; rather, the observation was part of an apparently established police practice of secret surveillance of any and all occupants of the toilet booths. We granted a peremptory writ of prohibition, holding that evidence so procured will not be received inasmuch as it is the result of a general exploratory search conducted for the sole purpose of discovering evidence of guilt and, as such, is violative of both federal and state constitutional guarantees.

The People contend that the case at bench is distinguishable from *Bielicki* in three respects: first, that here the activity was observed through a vent which had presumably been installed for a legitimate purpose, rather than through a

special spypipe; and second, that the toilet booths here involved were not pay toilets, as they were in *Bielicki*. Neither of these factual differences, however, is legally significant: the purpose for which Officer Nichols used the vent was certainly not the purpose for which it had been installed, and it cannot be said that petitioner "impliedly" consented to such observation merely because the toilets could be occupied without paying a special fee.

■ Third, the People argue that the crucial fact in *Bielicki* was not the manner in which the unlawful act was observed by the police but the nature of the place where the act was committed. It is then emphasized that in *Bielicki* the unlawful act was committed through a hole in the partition between the stalls and hence "could not have been seen by a member of the general public," while here the parties knelt on the floor and committed the act by means of the space beneath the partition, their activity thus being (it is asserted) "clearly observable to any person of the general public who might have entered the men's room" at that moment.

This proposed distinction is equally unsound as applied to the facts here established. The crucial fact in *Bielicki* was neither the manner of observation *alone* nor the place of commission *alone,* but rather the manner in which the police observed a place—and persons in that place—which is ordinarily understood to afford personal privacy to individual occupants. Of course, clandestine observations by police officers of premises devoted to common use by the general public —such as, for example, the shopping areas and public hallways and elevators of the department store here involved—is not prohibited by our decision in *Bielicki*. (See p. 609 [9] of 57 Cal.2d.) ■ But it is equally clear that authority to maintain clandestine surveillance of common use public places and persons therein is not the equivalent of license to surreptitiously invade the right of personal privacy of persons in private places. Man's constitutionally protected right of personal privacy not only abides with him while he is the householder within his own castle but cloaks him when as a member of the public he is temporarily occupying a room— including a toilet stall—to the extent that it is offered to the public for private, however transient, individual use.

■ In describing his duties of surveillance, Officer Nichols testified that *"Anyone who happened to come in* I'd give a description [by radio] of who it was and where they were." (Italics added.) The officer had never seen petitioner

or the other man before they entered their respective stalls, had not received any information concerning either of them from his fellow officers or any other source, and had no grounds for believing or even suspecting that they were occupying the stalls for anything other than a lawful purpose. The observation, as in *Bielicki*, thus constituted an impermissible search. (*United States* v. *Lefkowitz* (1932) 285 U.S. 452, 465 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775]; *United States* v. *Guido* (7th Cir. 1958) 251 F.2d 1, 4 [4], cert. den. 356 U.S. 950 [78 S.Ct. 915, 2 L.Ed.2d 843]; *United States* v. *Joseph* (E.D.Pa. 1959) 174 F.Supp. 539, 544 [6, 7] affd. 278 F.2d 504, cert. den. 364 U.S. 823 [81 S.Ct. 59, 5 L.Ed.2d 52]; *People* v. *Schaumloffel* (1959) 53 Cal.2d 96, 100-101 [1] [346 P.2d 393]; *People* v. *Mills* (1957) 148 Cal.App.2d 392, 399-401 [2] [306 P.2d 1005]; see *People* v. *Roberts* (1956) 47 Cal. 2d 374, 378-379 [7, 8] [303 P.2d 721].) And while the act committed in the present case might possibly have been visible—at least to some extent—had the officer been observing from a public, common use portion of the restroom, the fact remains that he was not so stationed and the subject evidence was not so obtained; rather, it was discovered solely by means of the just described impermissible search, and hence was inadmissible under the settled law of this state. (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 271 [1] [294 P.2d 23]; cf. *People* v. *Ditson* (1962) 57 Cal.2d 415, 438-439 [7, 8] [20 Cal.Rptr. 165, 369 P.2d 714].)

Let the peremptory writ of prohibition issue as prayed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J.. and Tobriner, J., concurred.