[Crim. No. 8661. Second Dist., Div. Four. Mar. 15, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT LEE YOUNG, Defendant and Appellant.

Alexander, Inman & Fine and Richard H. Levin for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence Tapper, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County, defendant and codefendant (not appealing) were charged with the crime of sex perversion in violation of section 288a of the Penal Code. The information further alleged defendant Young had suffered a prior conviction of a felony, to wit, burglary. Defendants entered pleas of not guilty and defendant Young denied the prior conviction. Defendants and all counsel waived trial by jury.

Pursuant to stipulation the cause was submitted to the court on the evidence introduced and testimony contained in the transcript of the proceedings had at the preliminary hearing, all sides reserving the right to produce additional evidence if they so desired. Defendants were found guilty as charged. The court made no finding as to the prior convic-

tion. Motion for a new trial and probation were denied and defendant Young was sentenced to a term of 60 days in the county jail. Young alone appeals from the judgment of conviction.

Defendant makes no contention as to the sufficiency of the evidence. His sole contention on appeal is that the evidence obtained was inadmissible because the officers' testimony was based upon illegally obtained evidence. The evidence pertinent to defendant's position is as follows:

Officers Warren J. Franci and H. C. German of the Los Angeles Police Department vice detail testified that on April 7, 1962, they were concealed in a gardener's tool shack which separated the men's restroom from the women's restroom. The shack is not open to the public, but is kept locked when not being used by the gardener or the police department. There is located on the wall separating the shack from the men's room a galvanized metal vent parallel to and 4 to 5 feet above the ground; the vent protrudes 4 or 5 inches into the men's room, forming a trap which is covered by a wire mesh and hardware cloth. Through the vent it is possible to look into the restroom. The wire mesh forms part of the structure when the officers use it to observe the restroom. It was the officers' practice to stake out in the tool shack and, upon hearing someone enter the restroom, to go to the vantage point and observe what was happening. It was possible by looking through the wire mesh to see not only the door to the restroom but also the three latrines. On April 7, 1962, they observed, while looking through the vent, the conduct of both defendants as is denounced by section 288a of the Penal Code. The commodes in the restroom had neither doors nor sides but were exposed to the vision of any person entering the restroom.

After the arrest, one of the officers had a conversation with defendant in which defendant freely admitted that while he was waiting to pick up his wife he thought he would go into the restroom for the purpose of getting some relief sexually. When asked if he had been there before, defendant replied he had been there several times in the past.

Defendant contends that the testimony of the officers was inadmissible, since their observation of his conduct constituted an illegal search. Defendant urges that the facts in this case are substantially the same as those in *Bielicki* v. *Superior Court*, 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288], and therefore the judgment of conviction should be reversed. With this we disagree. The factual situations between the

two cases are clearly distinguishable. Unlike *Bielicki, supra,* and *Britt* v. *Superior Court,* 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817], here the commodes of the men's room were exposed to any persons entering the restroom area— they had neither doors nor sides. From their vantage point in the tool shack adjoining the restroom the officers observed the unlawful activities of defendant and codefendant taking place in an area open to public view and to anyone entering the toilet area. The officers then left the tool shack and immediately entered the men's restroom where they saw defendant sitting on a commode with the codefendant standing approximately 3 feet in front of him.

In *Bielicki, supra,* the officers indicated they had ''observed activities . . . which no member of the public could have seen, as they were carried on within the confines of toilet booths each enclosed by three walls and a door. . . .''

We feel that the evidence in the case at bench is similar to that in the case of *People* v. *Norton,* 209 Cal.App.2d 173, 176, 177 [25 Cal.Rptr. 676], wherein the court stated, ''The activities observed by the police in *Bielicki* were such that no other member of the public could have seen them, since they were carried on in toilet booths fully enclosed by three walls and a door. Distinguishable therefore, as the Supreme Court concluded, were (a) those cases holding that a consent to search is implied or even unnecessary where illegal acts, observable in or from an area open to the general public, are in plain view to the police as to any member of the public [citations] ; and (b) those cases holding that looking through a window does not constitute an unreasonable search [citation].

''The above critical circumstance of 'privacy of place' is not present in the case before us. Appellant and his codefendant did not carry on their criminal activities in a private place, but in a doorless toilet stall which opened onto the public part of a public restroom. Their activities were not, as in *Bielicki,* such that no other member of the public could have seen them. They were conducted in the plain view of any member of the public who might happen to use the restroom. Had the police entered the public part of the restroom they could have observed such activities in the same way as any member of the public. If appellant had any right of privacy, he certainly waived it.

''As the court pointed out in *Bielicki,* the term 'search' as used in the pertinent provisions of the United States and California Constitutions imports a definite con-

cept. ' '' [T]he term implies some exploratory investigation or an invasion and quest, a looking for or seeking out. . . . A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way.'' [Citation.] ' ▉ Merely to observe what is perfectly apparent to any member of the general public who might happen to be on the premises is not a search. [Citations.] ''

▉ Judges can take judicial knowledge from the case files in their own courts that public toilets in metropolitan parks, terminals, theaters, department stores and in similar places, frequented daily by masses of people, are often the locale of vice of many kinds such as sexual perversion, sale of narcotics, petty thefts, robbery and assaults. To hold that the public areas of such toilets are to be ''off limits'' from clandestine surveillance by police would be to encourage the use of such places by perverts, panderers, pickpockets, addicts and hoodlums. Such persons would seek asylum or refuge in such places with the assurance that they could conduct their illicit activities therein while fully protected from the secret surveillance of the vice squad. Should the areas of such toilets, where the members of the public are free to circulate, as distinguished from areas where one may seclude oneself from public view, such as in an enclosed commode or toilet stall, become areas removed from such secret surveillance by the police, the peril to immature and innocent youth would be increased immeasurably. By leaving a ''spotter'' or ''lookout'' at the door to warn other perverts or degenerates of the approach of police, such immoral persons could conduct their illicit activities in full view of impressionable youths. Parents would not rest secure that their youngsters could use such facilities without the fear that they would witness scenes of shocking adult degeneracy such as witnessed by the police in the instant case.

▉ In the case before us, defendant's criminal offense was committed out in the open and the fact that it was observed by the arresting officers from a vantage point concealed from public view from which the officers could conduct an effective vigil does not render the evidence inadmissible upon the ground that it was illegally obtained.

Judgment of conviction is affirmed.

Burke, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1963.