[Crim. No. 9716.   Second Dist., Div. Two.   Nov. 20, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. DALLAS HOLLOWAY, Defendant and Appellant.

---

Charles L. Crouch, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

KINCAID, J. pro tem.*—Appellant, with his codefendant, Patricia J. Wade, was charged with violation of section 11530 of the Health and Safety Code, unlawful possession of a narcotic. Jury trial was waived and appellant was found guilty as charged. The court denied probation and sentence to the state prison followed. Appeal is taken herein from this judgment.

The factual record discloses that De Wayne Anderson, the arresting officer, testified that at about 3 o'clock in the morning on June 29, 1963, he and his partner, Officer Andrews, were driving northbound on Graham Street in Los Angeles in a police panel truck. They saw a man, later identified as Orlandis Johnson, walking rapidly away from an apartment building on Graham Street. Because of the lateness of the hour, the officers decided to stop and question Johnson. Before they got to him Johnson dropped two items from his trousers pocket onto the sidewalk. Anderson picked up the items, found that they appeared to be two marijuana cigarettes and he therefore arrested Johnson. Upon searching him he found several containers wrapped in tinfoil similar to containers later found in defendant's possession. Anderson asked Johnson where he had obtained the marijuana. He

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

denied all knowledge of it. Anderson then asked Johnson where he was coming from and Johnson said he had been visiting his girl friend and pointed to the only lighted apartment in the building. He was then placed in the police vehicle.

Anderson and Andrews proceeded to the building. The lighted apartment was at the rear. A blacktopped parking lot ran along the side of the building for some distance to an alley. The officers walked on the parking lot to the rear of the building and approached the lighted window through an open area. Anderson stood about one foot from the open, undraped living room window and looked in. He saw appellant, with Patricia the codefendant, sitting in the living room, with a paper bag on his lap and counting numerous dollar bills. From time to time, appellant would reach into the bag. He dropped a foil-covered packet to his lap which appeared similar to those found in possession of Johnson. The packet appeared to Anderson to be the type used to contain dangerous drugs.

Anderson then told Andrews to watch through the window. He went to the front door of the apartment and knocked. When asked who was there, he replied, ''Bill.'' The voice again asked ''Who?'' The door not being immediately opened, Anderson tried the door, found it to be unlocked and walked in. He immediately arrested the appellant and Patricia.

Anderson had neither a search warrant nor a warrant for the arrest of the appellant. The paper bag was found to contain pills resembling Benzedrine and capsules similar to Sumal. A green leafy substance resembling marijuana was found in the bag. Two brown wrapped cigarettes which resembled marijuana were found in the medicine cabinet in the bathroom. It was stipulated that the materials were narcotics. Objection was overruled to the drugs being received in evidence.

As grounds for reversal appellant contends:

1. The evidence herein was obtained as a result of an arrest and search implemented by information obtained from an unreliable informant and should have been suppressed.

2. The evidence herein was obtained as a result of an arrest and search by officers who utilized trespass, fraud, stealth and deceit in gaining entrance to the residence of appellant and should have been suppressed.

3. The surreptitious acts of the officers herein were of an unlawful and unconstitutional nature which attack the senses

as basically unfair, unreasonable and unequitable, and therefore invalidate the arrest and search of the defendant.

As to the first ground cited by appellant, the facts herein fail to substantiate the contention that the search and seizure were implemented by information obtained from an unreliable informant. Johnson did not volunteer any information concerning the narcotics found near him or as to where he obtained them. He denied all knowledge of narcotics. In response to the officer's question as to where he had come from, Johnson said he had been visiting his girl friend and pointed to the only lighted apartment in the area. He gave no statement disclosing facts to indicate that a crime was being or was about to be committed. In the belief of the officers he did possess narcotics. His actions and statements were factors discovered by lawful methods that led to a finding of probable cause, followed by an entry and arrest.

The officers then proceeded through open area to a point where they could look through an undraped window into the lighted apartment. They saw that appellant was within and was holding a roll of currency and a paper bag from which he removed a packet of the type generally used to carry illegal drugs and similar to those possessed by Johnson. The officers had good reason to believe that Johnson had just come from appellant's presence. This was the only lighted apartment and the one that Johnson had indicated. There was a girl in the apartment and Johnson had said he had come from his girl friend's apartment. Under these facts, it was entirely reasonable to act upon the belief that a felony was being committed.

"A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony. Such a search is not rendered unlawful merely because it precedes rather than follows the arrest." (*People* v. *Torres*, 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; Penal Code, § 836.3.)

The evidence herein likewise fails to sustain appellant's contention that the contraband found in his possession was obtained as a result of illegal trespass, fraud, stealth or deceit. In the instant case, the officers left the sidewalk and crossed a parking lot to the open window. The outside of the building that gave access to the window was an open area which could be frequented by fellow building tenants and others. Standing in such a location looking in an open window does not, therefore, constitute being hidden, or an

effective attempt to conceal. The officers did not enter a private section of the building to obtain their view, but only witnessed what they saw from a section of the property generally available to the public.

■ Observation of that which is patent, including viewing through a window, is not a search within the meaning of the "unreasonable searches and seizures" proscribed by the Fourth Amendment to the Constitution of the United States.

■ The term "search" as used in the federal constitution has a fixed meaning as "some exploratory investigation." It connotes ". . . a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way." (*People* v. *West,* 144 Cal.App.2d 214, 219 [300 P.2d 729].) ". . . Merely to observe what is perfectly apparent to any member of the general public who might happen to be on the premises is not a search. . . ." (*People* v. *Norton,* 209 Cal.App.2d 173, 176-177 [25 Cal.Rptr. 676]; *Bielicki* v. *Superior Court,* 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288].)

The essence of a search is the viewing of that which was not only intended to be private or hidden, but that which was, so far as the one searched is able to do so, made concealed or closed from open viewing. Thus, although a person engages in an illegal activity in a public rest room, if he closes himself off from the public view so far as possible, what is observed by a police officer will be excluded when disclosed by search. (*Bielicki* v. *Superior Court, supra,* 57 Cal.2d 602; *Britt* v. *Superior Court* (1962) 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817].) When the act is done with an equal intent to conceal, but without normally effective acts that do conceal so that in fact a member of the general public could observe the act, observations by a police officer do not constitute a search at all. (*People* v. *Norton, supra,* 209 Cal. App.2d 173; *People* v. *Young* (1963) 214 Cal.App.2d 131 [29 Cal.Rptr. 492].)

Looking through a window does not constitute unreasonable search. (*People* v. *Martin,* 45 Cal.2d 755, 762 [290 P.2d 855].) Looking through a window is viewing that which is patent and visible to the general public. The fact that an officer may tend to observe more accurately than the public at large does not change the situation. The officers were entitled to act upon what they saw and arrest appellant.

■ Appellant's final contention that the acts of the officers in observing his activities through the open window and

in entering his apartment by turning the knob on the unlocked door without first identifying themselves or explaining the purpose of their visit were violative of his constitutional rights against unlawful search and seizure is without merit.

Penal Code section 844 generally requires that before there can be a breaking open of a closed door or window, a demand for admittance and a statement of the purpose of admission must be made. In the present case, Officer Anderson neither identified himself nor stated the purpose of his proposed entry. However, an entrance by the mode employed was justified by the factual circumstances. Drugs are small and may be easily and quickly disposed of. Had the officer not entered as he did, but waited for admission after stating his purpose, all evidence could have been destroyed. Appellant alleges that Anderson's partner maintained his view through the window and could have somehow prevented destruction. But how he might have done so is not made clear. While the fellow officer might have been able to testify as to the destruction of material from his vantage point, the drugs and narcotics which were the vital evidence may have been flushed down the toilet or otherwise destroyed.

"It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. ▪ Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose." (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6] ; Cf. *People* v. *Ker,* 195 Cal.App.2d 246, 255, 256 [15 Cal.Rptr. 767] ; *Ker* v. *California,* 374 U.S. 23 [83 S.Ct. 1623, 10 L.Ed. 2d 726].)

Here, from what the officers saw, and considering all the surrounding circumstances, they well may have determined

that, had they first demanded entrance and stated their purpose, the evidence in the hands of appellant would have been destroyed and the arrest frustrated. Officer Anderson, by his prompt actions, violated no basic constitutional guarantee by getting inside the apartment where he was entitled to be, more quickly than he would had he complied with section 844, Penal Code.

The judgment is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.