**Ralph Arlee POORE, Petitioner,**

v.

**STATE OF OHIO et al., Defendants.**
**Newton TOWNSEND, Petitioner,**

v.

**STATE OF OHIO et al., Defendants.**

**Nos. C 65-167, C 65-168.**

United States District Court
N. D. Ohio, E. D.

April 9, 1965.

On Motions for Stay of Orders Pending Appeal, June 10, 1965.

Larry L. Inscore, Lutz & Inscore, Mansfield, Ohio, for plaintiffs.

Rex D. Larson, Pros. Atty., William F. McKee, Asst. Pros. Atty., Mansfield, Ohio, for defendants.

CONNELL, Chief Judge.

We have here a petition from an accused in a State criminal prosecution for removal of that prosecution to this Court under Title 28 U.S.C. § 1443, which reads:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the

courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law. June 25, 1948, c. 646, 62 Stat. 938."

For his second cause of action, the petitioner seeks the summary exercise of this Court's equitable powers to enjoin further proceedings in the State court and/or an injunction against certain police officers which would preclude them from using any evidence allegedly seized in violation of the plaintiff's constitutional rights. The defendants have joined in an answer which we here treat as a motion to remand and to dismiss the prayer for injunctive relief.

The facts as alleged in the petition, which we must accept as true for present purposes, reveal this sordid tale. On October 4th, 1962, the Grand Jury of Richland County, Ohio, indicted the petitioner here on the charge of sodomy. The evidence upon which the indictment was predicated, and the use of which the petitioner vigorously opposes, was obtained in the following manner: Police officers of the Mansfield, Ohio Police Department stationed themselves behind a door leading into a men's public toilet located on the Public Square of Mansfield's City Central Park in the heart of the downtown shopping area. An opening was cut in the door of the toilet room which led to the utility area and heating plant next to the toilet. In this opening the police installed a metal towel rack of common design for dispensing paper towels and above the dispenser they placed a "two-way glass." On the toilet room side the "two-way glass" appeared to be a mirror in which one could view his face as he obtained a paper towel, and on the opposite, or furnace room side of the "two-way glass," one could look through the glass as a window and observe, without detection, what transpired in the toilet room. Police officers concealed themselves in the furnace room and allegedly observed and filmed the defendant in the act of committing the crime with which he is charged.

At this time the individual petitioner here was not under suspicion nor had any warrants issued for either his arrest or search; there was a strong and apparently well-founded suspicion, however, that the public toilet was the scene of criminal activity. It is significant that this public toilet is operated and maintained by the City of Mansfield, Ohio for public use.

On December 5, 1962 the petitioner moved to suppress the above mentioned evidence as being obtained in violation of his right to be secure against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution. On February 6th, 1963, the Richland County Court entertained the motion in open court and the motion was overruled. Petitioner alleges now that he has no recourse other than a removal to Federal Court to protect his constitutional rights.

The purpose of this statute is to prevent invidious discrimination under a local ordinance, a statute, or a constitution of a state. Thus, the substantive or procedural law of the State in which the criminal case is pending must deprive a defendant of equal rights before the case can be removed to a federal court. Anderson v. State of Tennessee, 228 F.Supp. 207 (E.D.Tenn.1963). The statute does not provide for removal merely because of erroneous actions or decisions by judicial or administrative officials. Commonwealth of Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1906). As stated by the court in State of Maryland v. Kurek, 233 F.Supp. 431, 433 (D.C.Md.1964):

"Even assuming that the law of Maryland sanctions the refusal of the prosecuting and judicial authorities of the State to yield to Kurek's demands for a speedy trial, and that

such refusal amounts to a deprivation of his rights under the Fourteenth Amendment, still, the claimed violation would not authorize a removal under 28 U.S.C. § 1443 unless there is a violation of the *equal protection* clause of the Fourteenth Amendment, such as discrimination against a particular race. The fact that rights guaranteed by the Fourteenth Amendment are violated in the course of a criminal proceeding will not authorize a removal under 28 U.S.C. § 1443 where the procedure adopted by the State authorities is applied equally to all citizens of the United States."

In construing the predecessor to the present removal statute, our reviewing court, in Hull v. Jackson County Circuit Court, 138 F.2d 820, 821 (6th Cir. 1943), stated:

"The statute does not justify federal interference where a party is deprived of any civil right by reason of discrimination or illegal acts of individuals or judicial or administrative officers. If the alleged wrongs are committed by officers or individuals the remedy is the prosecution of the case to the highest court of the state and then to the Supreme Court of the United States as the laws of the United States authorize."

In the one reported case in which a petitioner sought to remove a state criminal proceeding on the ground that allegedly illegal evidence was to be used against him, the Ninth Circuit Court of Appeals rejected the contention and refused to allow removal. Steele v. Superior Court of California, 164 F.2d 781 (1947).

■ This overwhelming weight of authority compels us to conclude that the petition for removal must be denied, and the cause remanded to the State court.

■ The petitioner has also sought an injunction against further proceedings in this cause in the State court. Under 28 U.S.C. § 2283: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." We perceive of no statute which authorizes our intervention. Since we disavow jurisdiction of this cause and have remanded it to the State court, intervention is not necessary in aid of our jurisdiction. Consequently we are precluded by the terms of the above quoted section from enjoining further proceedings in Richland County.

■ Finally, the petitioner has asked us to enjoin the police officers from giving testimony of what they observed from their vantage point in the boilerroom and to enjoin the prosecutor from introducing the films into evidence on the ground that this evidence was obtained in violation of the Fourth Amendment rights. Although we entertain serious misgiving about the validity of the petitioner's contention, we need not reach this constitutional issue. In a long and uninterrupted line of cases, federal courts have consistently refused to intrude into the trial of State criminal proceedings to dictate who will and who will not testify. Even if we were inclined to grant the petitioner's request, the most recent pronouncements of the Supreme Court of the United States would preclude us from so doing. We begin with Mr. Justice Frankfurter's excellent opinion in Stefanelli v. Minard, 342 U.S. 117, 120, 123–124, 72 S.Ct. 118, 120, 121–122, 96 L.Ed. 138 (1951), where petitioners sought an injunction against the use, in a pending State criminal case against them in New Jersey, of evidence claimed to have been obtained by an unlawful search by State police.

"We hold that the federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure. The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law. It is impressively rein-

forced when not merely the relations between coordinate courts but between coordinate political authorities are in issue. The special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law, has been an historic concern of congressional enactment, see, e. g., 28 U.S.C. §§ 1341, 1342, 2283, 2284(5). * * * The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range—would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. * * * To suggest these difficulties is to recognize their solution."

Any doubt about the vitality of this doctrine, with the advent of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961) and similar cases, was effectively put to rest in Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963) in which the court held that an injunction against testimony of the witness in a State criminal trial had been improvidently granted. Cf. also, Baines v. City of Danville, 337 F.2d 579 (4th Cir. 1964); Potter v. State of Missouri, 325 F.2d 525 (8th Cir. 1963); Kabath v. O'Connor, 234 F.Supp. 917, 922 (E.D.N.Y.1964). Therefore we conclude that we are without power to enjoin the testimony of the police officers or the use of the film in the petitioner's pending criminal trial. The plea for injunctive relief is hereby dismissed.

## ON MOTIONS FOR STAY OF ORDERS PENDING APPEAL

The plaintiffs, under indictment by the Grand Jury of Richland County, Ohio for the crime of sodomy, have alleged that they will be deprived of a fair trial for this offense because evidence will be introduced there which was obtained in a manner violative of rights secured to them by the Fourth and Fourteenth Amendments to the United States Constitution. To parry this fancied future injustice, plaintiffs have brought these actions requesting that their cases be removed to the United States District Court under authority of 28 U.S.C. § 1443, and further that the Mansfield Police Department and the Richland County Prosecutor's Office be enjoined from using certain evidence in any further proceedings against them. Since it is well established that Section 1443 may not be used to prevent a contemplated erroneous ruling on evidentiary matters, we remanded these cases to the Richland County Common Pleas Court. Since it is equally well established that federal courts will not disrupt the course of state criminal trials to dictate who shall or shall not testify, we dismissed the plaintiffs' pleas for injunctive relief. Cf. Memorandum filed in these cases on April 9, 1965. The plaintiffs now move the Court to stay the execution of its Order to Remand pending appeal to the Sixth Circuit Court of Appeals and to grant an interim injunction enjoining the defendants, for the duration of that appeal, from giving testimony or introducing certain films into evidence in any proceeding against the plaintiffs.

Rule 62(c) of the Federal Rules of Civil Procedure provides, in part:

> "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party."

On July 2, 1964, Congress amended the removal statutes to include Section 1447(d) which permits appeal of remand orders in cases where removal is

sought under Section 1443, as here. Since there is no provision in the new statute for obtaining a stay of execution pending appeal, we will treat both parts of the plaintiffs' present motions as arising under Rule 62(c) inasmuch as the remand orders are most closely analogous to the exercise of the court's injunctive powers. By the clear language of that rule, the denial of a stay in these cases rests squarely in the sound discretion of the district court. The test which dictates the exercise of that discretion, approved in 7 Moore's Federal Practice, 1365, 2d Ed. (1955) was enunciated by the Fifth Circuit Court of Appeals in Shinholt v. Angle, 90 F.2d 297, 298 (5th Cir. 1937), cert. den. 302 U.S. 719, 58 S.Ct. 40, 82 L.Ed. 555 (1937):

> "The question presented was not whether the court could or should grant the ultimate relief sought. That question was being transferred to another tribunal. The question was: Upon a consideration of all the facts, would harm result to either party as a result of the granting or denial of the stay, and were there probable grounds for an appeal to protect rights which might be prejudiced by a refusal to grant the stay?"

It is readily apparent that the purpose of the plaintiffs' present appeals may be partially or wholly frustrated if we were to deny the stay and open the way for their immediate prosecution in Richland County. On the other hand, continued delay of these cases may injuriously affect the prompt adjudication of criminal charges which the people of Richland County have a right to expect. Therefore the controlling factor which will influence the exercise of our discretionary power is whether or not the plaintiffs have probable grounds for their appeal.

The case has been presented to us from the outset on stipulated facts, which we summarized in our Memorandum of April 9, 1965 as follows:

> "The evidence upon which the indictment was predicated, and the use of which the petitioner vigorously opposes, was obtained in the following manner: Police officers of the Mansfield, Ohio Police Department stationed themselves behind a door leading into a men's public toilet located on the Public Square of Mansfield's City Central Park in the heart of the downtown shopping area. An opening was cut in the door from the toilet room which led to the utility area and heating plant next to the toilet. In this opening the police installed a metal towel rack of common design for dispensing paper towels and above the dispenser they placed a 'two-way glass.' On the toilet room side the 'two-way glass' appeared to be a mirror in which one could see his face as he obtained a paper towel, and on the opposite, or furnace room side of the 'two-way glass' one could look through the glass as a window and observe, without detection, what transpired in the toilet room. Police officers concealed themselves in the furnace room and allegedly observed and filmed the defendant in the act of committing the crime with which he is charged."

Since the evidence gathered against the plaintiffs was obtained by looking through the reverse side of a small mirror over a towel rack, this necessarily places the officers' view at the eye level of one who would be standing in the open part of the lavatory. Thus the (view) gained by the police was one afforded any member of the public who might have walked into the public part of this building. Therefore there was no "search" within the meaning of Fourth Amendment proscriptions. The term "search" necessarily implies the prying into or uncovering of that which one has a right to, and intends to, and effectively does conceal from the view or scrutiny of another. Where, as here, the criminal act was open to the view of the public, it cannot be said that the person of the plaintiffs, or the place where they violated the law, was the object of a

"search." The plaintiffs' exhibition here was not discerned by any illegal "search;" these plaintiffs do not own this public property. The police have a right and duty to go upon public property to detect crime, to prevent crime, and to protect the public from crime and criminals.

It is anticipated that the plaintiffs will rely on two very similar cases from California in which the California Supreme Court held that evidence gathered much in the same manner as that obtained in these cases here was inadmissible because the police officers had violated the commands of the Fourth and Fourteenth Amendments. In Bielicki v. Superior Court of Los Angeles, 57 Cal.2d 602, 21 Cal.Rptr. 552, 371 P.2d 288, 290 (1962), the police officers had stationed themselves on the roof of a public lavatory in an amusement park. Peering through a vent in that roof, the officers observed that accused in the performance of the same criminal act with which the plaintiffs here are charged. The court there held that the accused was the victim of an unreasonable search and ordered that evidence so gained should be suppressed. In dismissing as inapplicable that line of cases, which ordains that premises open to the public are not clothed with the same Fourth Amendment guarantees that pertain to private dwellings, the court stated that:

"In each of the just cited cases the police officers entered upon premises *open to the general public* and while there saw, as any member of the public could also have seen, illegal objects or activities justifying further search or arrest. But in the case at bench Officer Hetzel climbed upon the roof of the rest room—which was certainly not a portion of the premises that was open to the general public—and from that vantage point secretly observed activities of the petitioners which no member of the public could have seen, as they were carried on within the confines of toilet booths each enclosed by three walls and a door."

Later, in that same year, the California Supreme Court was confronted with a similar situation, and followed its former ruling. In Britt v. Superior Court of Santa Clara County, 58 Cal.2d 469, 24 Cal.Rptr. 849, 374 P.2d 817, 818–819 (1962), the court rejected an effort by the State to distinguish the Bielicki case, thus:

"It is then emphasized that in Bielicki the unlawful act was committed through a hole in the partition between the stalls and hence 'could not have been seen by a member of the general public,' while here the parties knelt on the floor and committed the act by means of the space beneath the partition, their activity thus being (it is asserted) 'clearly observable to any person of the general public who might have entered the men's room' at that moment.

"This proposed distinction is equally unsound as applied to the facts here established. The crucial fact in Bielicki was neither the manner of observation *alone* nor the place of commission *alone,* but rather the manner in which the police observed a place—and persons in that place—which is ordinarily understood to afford personal privacy to individual occupants. *Of course, clandestine observations by police officers of premises devoted to common use by the general public—* such as, for example, the shopping areas and public hallways and elevators of the department store here involved—*is not prohibited by our decision in Bielicki.*" (Emphasis added)

In Britt, as in Bielicki, the vantage point of the police was elevated so as to give them a view of the entire room, including those portions which are generally intended to be private. Where the police do not attempt to invade those private areas, however, their surveillance encroaches upon no alleged right of privacy of constitutional origin. California courts have refused to extend the

Bielicki-Britt holdings to a case which most closely approximates the one at bar. In People v. Young, 214 Cal.App.2d 131, 29 Cal.Rptr. 492 (1963), the secreted vantage point of the police offered no wider range of vision than that available to any member of the public who walked into the lavatory in question.

"Defendant urges that the facts in this case are substantially the same as those in Bielicki v. Superior, 57 Cal.2d 602, 21 Cal.Rptr. 552, 371 P.2d 288, and therefore the judgment of conviction should be reversed. With this we disagree. The factual situations between the two cases are clearly distinguishable. Unlike Bielicki, supra, and Britt v. Superior Court, 58 A.C. [Cal.2d 469,] 480, 24 Cal.Rptr. 849, 374 P.2d 817, here the commodes in the men's room were exposed to any persons entering the rest room area—they had neither doors nor sides. From their vantage point in the tool shack adjoining the rest room the officers observed the unlawful activities of defendant and co-defendant taking place in an area open to public view and to anyone entering the toilet area. * * *

"The above critical circumstances of 'privacy of place' is not present in the case before us. Appellant and his co-defendant did not carry on their criminal activities in a private place, but in a doorless toilet stall which opened onto the public part of a public restroom. * * * Had the police entered the public part of the rest room they could have observed such activities in the same way as any member of the public. * * * Merely to observe what is perfectly apparent to any member of the general public who might happen to be on the premises is not a search."

More recently the California courts have reaffirmed the position taken in the Young case in People v. Holloway, 41 Cal.Rptr. 325 (Cal.App. 1964) where evidence of open possession of narcotics was held to be properly admissible evidence.

"The essence of a search is the viewing of that which was not only intended to be private or hidden, but that which was, so far as the one searched is able to do so, made concealed or closed from open viewing. Thus, although a person engages in an illegal activity in a public rest room, if he closes himself off from the public view so far as possible, what is observed by a police officer will be excluded when disclosed by search. (Citing Bielicki and Britt). When the act is done with an equal intent to conceal, but without normally effective acts that do conceal so that in fact a member of the general public could observe the act, observations by a police officer do not constitute a search at all." (p. 328)

It is readily apparent that the instant case falls into the latter category of authorities. The Mansfield police officers availed themselves of a view which any member of the public entering the washroom might have had. If the movies taken from that position contain evidence of criminal activity it cannot be said that the evidence was obtained by a "search," as that term is used in the Fourth Amendment. It is axiomatic that observation of that which is openly visible does not constitute a "search." Therefore the plaintiffs have offered no indication that any constitutional right has been violated. On the contrary, their criminal activity was the subject of perfectly proper and unfortunately necessary police surveillance. The reflections of Judge Jefferson, in the Young case, supra, are worth repeating here:

"Judges can take judicial knowledge from the case files in their own courts that public toilets in metropolitan parks, terminals, theaters, department stores and in similar

places, frequented daily by masses of people, are often the locale of vice of many kinds such as sexual perversion, sale of narcotics, petty thefts, robbery and assaults. To hold that the public areas of such toilets are to be 'off limits' from clandestine surveillance by police would be to encourage the use of such places by perverts, panderers, pickpockets, addicts and hoodlums. Such persons would seek asylum or refuge in such places with the assurance that they could conduct their illicit activities therein while fully protected from the secret surveillance of the vice squad. Should the areas of such toilets, where the members of the public are free to circulate, as distinguished from areas where one may seclude oneself from public view, such as in an enclosed commode or toilet stall, become areas removed from such secret surveillance by the police, the peril to immature and innocent youth would be increased immeasurably. By leaving a 'spotter' or 'lookout' at the door to warn other perverts or degenerates of the approach of police, such immoral persons could conduct their illicit activities in full view of impressionable youths. Parents would not rest secure that their youngsters could use such facilities without the fear that they would witness scenes of shocking adult degeneracy such as witnessed by the police in the instant case."

Upon consideration we have found that there is no probable basis for the plaintiffs' appeals which can justify the further delay of the administration of justice in Richland County.

The Motions to Stay the Court's remand orders are overruled; and the request for a temporary restraining order against the use of any evidence is hereby denied.