[Crim. No. 10258.   Second Dist., Div. Three.   Mar. 15, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. OSCAR JANER MALDONADO et al., Defendants and Appellants.

Joseph Johnson Holman, Jr., in pro. per., and Hugh R. Manes for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Appellants Maldonado and Holman, each convicted by jury of two counts of violation of section 288a of the Penal Code, given suspended sentences and placed on probation, appeal from the orders, as judgments.

Separate briefs have been filed. Holman, having refused to accept the services of appointed counsel, prepared his own briefs.

First to be considered is the contention of both appellants that the evidence upon which they were convicted, consisting of the testimony of police officers as to their observations through what amounted to a hidden peephole into a men's restroom of a theatre, was illegally obtained and erroneously received in evidence. This ground of appeal is untenable.

Above the lavatory of a men's restroom in a theatre there was a plumbing access hole covered by a screen. Two officers had previously obtained permission of the doorman of the theatre to enter the upper area through this hole and on the night in question they stationed themselves above the ceiling in a position to view the area of the lavatory. There was but one commode in the room; it was enclosed on three sides and had a door which stood open, and it was separated from the

urinal by a partition. At the entrance of a small hallway leading from the theatre proper was a heavy curtain; at the restroom end of the hall was a fire door. The curtain was in place; the door was open. The lavatory was approximately 5 by 9 feet. The two officers testified that from their vantage point they observed the commission of two violations of section 288a by Maldonado and Holman upon a third man, and then placed appellants under arrest. The acts were committed, not in the stall which contained the commode, but in the open area of the lavatory, and thus would have been in plain view of anyone entering the restroom.

It is contended by appellants that the facts bring the case within the principles declared in *Bielicki* v. *Superior Court*, 57 Cal.2d 602 [21 Cal.Rptr. 552, 371 P.2d 288] and *Britt* v. *Superior Court*, 58 Cal.2d 469 [24 Cal.Rptr. 849, 374 P.2d 817] and that therefore the testimony of the officers was erroneously admitted. The People respond that the facts were essentially different from those in either *Bielicki* or *Britt* and that in this respect the case of appellants is indistinguishable from *People* v. *Norton*, 209 Cal.App.2d 173 [25 Cal.Rptr. 676] and *People* v. *Young*, 214 Cal.App.2d 131 [29 Cal.Rptr. 492]. The difference is that in *Bielicki* and *Britt* the acts to which the observing officers testified were committed in enclosed stalls within the lavatory and were not observable except through some secret peephole such as the officers used, whereas in *Young* and *Norton*, although the acts were observed by the officers surreptitiously, they were committed in areas not screened from public view. In the former cases the search was illegal, and the evidence was inadmissible; in the latter cases the evidence was admissible for the reason that the accused had waived the right to claim that the evidence was obtained illegally. Receipt of the testimony of the officers' description of the acts of Maldonado and Holman was not error. Hearings were denied in both *Norton* and *Young*, and the cases are controlling.

The criminal acts of both appellants were committed upon the person of an unidentified young Caucasian who was described as having long blond hair. At the police station Maldonado was questioned by Officer Welsch as to why he had committed the act in the restroom, and the officer testified "Mr. Maldonado stated that the blond man had enticed him, and it was almost like entrapment, that he stood there waiting for it, 'I couldn't help myself so I went down on him.' "

The case was tried and the briefs were filed in the benighted pre-*Escobedo-Dorado* era. Upon oral argument counsel for Maldonado invoked the doctrine of those cases, contending that evidence was given of a confession by Maldonado when he had not been informed of his constitutionally protected rights to remain silent and to have legal assistance. Anticipating the contention, the Attorney General says of Maldonado's statement ''Taking the statement and circumstances all together, this phrase ('so I went down on him') has considerable impact as an admission, . . .'' but ''contains too great a portion of vagueness to be a confession.'' Considering the entire circumstances the statement was nothing short of a confession and could not have been considered by the jury as anything but a complete admission of guilt. There was no evidence that Maldonado was advised of his constitutional rights or that he had waived them. The receipt of the evidence, even in the absence of an objection, which would have been unavailing at the time, was error which requires reversal of the judgment against Maldonado.

Both appellants contend they were denied equal protection and due process, because of the following circumstances. The same two officers, from their same vantage point, observed conduct which caused them to arrest one Seeley and one Snyder for the same type of offense.

A complaint against Maldonado and Holman was dismissed by one municipal court judge at the preliminary hearing upon the ground that the evidence of the People had been obtained illegally. Two days later another municipal court judge, after hearing the evidence, dismissed a complaint that had been filed against Seeley and Snyder for their offense. A new complaint was filed against Seeley and Snyder and was likewise dismissed by the same municipal court judge and at the time of the trial of appellants no further proceedings had been taken against Seeley and Snyder. Some four months after dismissal of the first complaint against appellants another complaint was filed against them and they were held to answer by the same judge who had dismissed the complaints against Seeley and Snyder.

Maldonado's contention is stated as follows: ''The only rational explanation for the distinction made between appellant's case, and the two *Seeley-Snyder* cases, is predicated on race, color and national origin. In other words: *Snyder and Seeley* were both Caucasians whereas appellant is a Puerto Rican, and co-appellant Holman, a Negro.

"It follows that the Magistrate's decision was arbitrary and unreasonable, and deprived appellant of equal protection of the laws and due process of law in violation of the State and Federal Constitutions."

Assuming, as appellants contend, that the case against Seeley and Snyder consisted of evidence as strong and convincing as that against appellants, the conclusion does not follow that there was a purpose to discriminate against appellants upon either personal or racial grounds. In the absence of evidence that the authorities had or have a policy and practice of unfair and unequal law enforcement, the fact that some wrongdoers are proceeded against while others, equally suspect are not, does not, of itself, amount to illegal discrimination (*In re Finn,* 54 Cal.2d 807 [8 Cal.Rptr. 741, 356 P.2d 685]; *Ehrlich* v. *McConnell,* 214 Cal.App.2d 280 [29 Cal.Rptr. 283]). The failure to pursue the prosecution of Seeley and Snyder clearly fails to sustain the contention of appellants of unequal protection of the law.

The brief of Holman assigns numerous additional claims of error. We consider first the effect upon Holman's defense, of the erroneous admission of Maldonado's confession. That it added substantial weight to the testimony of the officers cannot be questioned. As to Holman, the problem of the jury was to weigh the accuracy of the officers' identification of the defendants with the credibility of Holman and the truth of his denials. Maldonado's confession lent support to the testimony of the officers that they were able to identify in the theatre the men whose conduct they had observed in the restroom. Holman's defense was that there was a mistake of identity in his arrest. This defense was seriously impaired by the admission of Maldonado that the officers made no mistake when they found him in the theatre audience.

After the arrest of Holman he was interviewed by the officers. Officer Welsch stated to him that they knew what he had done and asked him why he had done it. The officer testified to this interrogation and that Holman made no reply. The court gave the usual instruction upon the failure of an accused to make response to an accusatory statement. The admission of this testimony was error. *People* v. *Cockrell,* 63 Cal.2d 659 [47 Cal.Rptr. 788, 408 P.2d 116], decided that when an accused who knows of his right to remain silent in the face of an accusatory statement declines to make any response, his silence cannot justify an inference adverse to him. And it matters not that he did not declare that he was standing on his constitu-

tional right. (See *People* v. *Ridley*, 63 Cal.2d 671, 676 [47 Cal.Rptr. 796, 408 P.2d 124].) It is quite clear that Holman understood he had no duty to respond to the officers' questions. He declined to discuss with Officer Welsch public restroom activities which Welsch said was a problem which gave the police concern. But if he was not aware of his right to remain silent he should have been informed of his right before any accusatory question was asked. It would appear that as a development of the rule of *Griffin* v. *California*, 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106] and the *Escobedo-Dorado* rule the silence of an accused in the face of an accusatory statement will no longer justify an inference adverse to him, thus doing away with a type of evidence of questionable validity and value. That Holman was grievously harmed by the evidence of his silence cannot be doubted. As to him the crucial question was one of identity. About 15 minutes after the alleged occurrence he was taken from his seat in the theatre and placed under arrest. He and Maldonado were strangers to each other; they were not seated together. While the identification of Holman was legally sufficient it was by no means as positive as it would have been if the arrest had been made immediately in the restroom or if the officers had been able to give more specific reasons for their identification of Holman. Frequent reference was made to the police report, which was not placed in evidence. It was stated, without contradiction, that Holman is a Negro of light skin and that in the police report and in the booking records he was described as a Caucasian. The jury could reasonably have had a doubt upon the question of identification.

Other contentions of Holman do not call for particular discussion. Upon a consideration of the entire record we have concluded that Holman did not have a fair trial and that his conviction was a miscarriage of justice.

The judgment as to each count against each defendant is reversed. The order denying defendant Holman's motion for new trial not being appealable, the purported appeal therefrom is dismissed.

Ford, J., and Kaus, J., concurred.