**Ronald Gene CAMMACK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 61705.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 20, 1982.

Rehearing Denied Dec. 15, 1982.

---

Charles Padorr, Fort Worth, for appellant.

Henry M. Wade, Dist. Atty., Fred C. McDaniel and William M. Fry, Jr., Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for public lewdness, V.T.C.A., Penal Code,

§ 21.07(a)(3). Punishment was assessed by the court at sixty (60) days in jail and a fine of $500.00, probated for one year.

Appellant's sole contention on appeal is that as a matter of law there was no evidence to show that he was in a public place when the alleged offense occurred.

V.T.C.A., Penal Code, § 21.07(a)(3), provides:

"(a) A person commits an offense if he knowingly engages in any of the following acts in a public place or, if not in a public place, he is reckless about whether another is present who will be offended or alarmed by his act:

\* \* \* \* \* \*

"(3) an act of sexual contact."

V.T.C.A., Penal Code, § 1.07(a)(29), defines "public place" as:

"... any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."

The complaint and information alleged that the appellant "did unlawfully then and there knowingly engage in an act of sexual contact with R.L. Newell, by then and there touching the genitals, of the said R.L. Newell, with intent to arouse and gratify the sexual desire of Ronald Gene Cammack, while said persons were in a public place, namely: Red Letter News # 2, 10851 Harry Hines, Dallas, Texas ...."

On January 5, 1978, Robert L. Newell, a Dallas city police officer, working undercover on a temporary assignment, went to the Red Letter News Number Two on Harry Hines Boulevard. This place was apparently an adult book shop or newsstand containing a movie section with individual booths showing peep shows. Newell was in mufti. After entering the common area of the store, he went into several of the booths in the movie section. He eventually entered

booth six and deposited a quarter, leaving the door ajar about three inches. Appellant entered the completely enclosed booth, twenty-eight inches by forty-two inches, and closed the door.[1] Newell related that the appellant "groped my groin," made sexual contact and placed his hands on Newell's genitals there in the booth. Newell suggested that they go to his van parked outside. The appellant was thereafter arrested.

We are not here dealing with the question of a search. Cf. *Buchanan v. State,* 471 S.W.2d 401 (Tex.Cr.App.1971). The question is whether viewing booth # 6 in the Red Letter News No. 2 book store was a public place within the meaning of V.T. C.A., Penal Code, § 21.07.

Only recently the Dallas Court of Appeals in *Westbrook v. State,* 624 S.W.2d 294 (Tex. App.1981), held that a "peep show" booth which is completely enclosed is a public place.

Officer Newell entered the common area of the book store open to the public and went into several of the peep show booths—also open to the public—to view the movies. After he entered booth No. 6, leaving the door ajar, appellant entered and closed and possibly locked the door behind him. The public nature of the booth could not be changed by the appellant, acting alone, closing and locking the door, closeting himself with a stranger. *Westbrook v. State,* 624 S.W.2d 294 (Dallas Ct. of App.1981); Cf. *Green v. State,* 566 S.W.2d 578 (Tex.Cr.App. 1978); *Bishoff v. State,* 531 S.W.2d 346 (Tex.Cr.App.1976).

The judgment is affirmed.

ROBERTS, Judge, dissenting.

The majority upholds this conviction for public lewdness in the face of testimony in the case that the act of sexual contact took place in a completely enclosed booth from which the public was excluded. I dissent to the holding that this booth was a "public place" within the meaning of V.T.C.A., Penal Code, Section 21.07.

In *Green v. State,* 566 S.W.2d 578 (Tex. Cr.App.1978), this court dealt with the question of whether a viewing booth in an adult bookstore open to the public is a "public place" within the meaning of V.T.C.A., Penal Code, Section 21.07. The court's discussion and holding were in the context of a challenge to the trial court's jury charge. The court stated:

> "We also hold that the court did not err in refusing to limit the definition of a public place to booth No. 18. The information alleged in part that 'Billy Ray Green did then and there in a public place, to-wit: Mr. Peeper's Book Store, a shop open to the public ... knowingly engage in deviate sexual intercourse.' All of the evidence shows that Mr. Peeper's Book Store was a public place. There was no evidence that the act was committed outside of the shop. The *booth* was open to anyone. All one had to do was draw the curtain *to enter the booth.* If one wanted to watch part of a moving picture, he could put a coin into the machine. Appellant testified that he looked into other booths and saw people in them. The store was open to the public, that is the way it is supposed to make a profit. Later in this opinion we hold that appellant had no right to expect privacy *in the booth. Under all of the evidence the booth was part of a public place."* (emphasis added)

Id. at 582.

Both the majority in this case and the Dallas Court of Appeals in *Westbrook v. State,* 624 S.W.2d 294 (Tex.App.1981), have misread both the holding and the factual setting of *Green.*

---

1. Newell acknowledged there was a lock on the door, and that he did not know whether appellant locked the door although the appellant closed it when entering. Appellant testified at the motion to suppress hearing he locked the door upon entering the booth occupied by a man he did not know.

As I read the court's opinion in *Green,* its conclusion that the viewing booth in that case was a public place was based on three factors: the nature of the book store, the nature of the viewing booth, and the appellant's expectation of privacy. The nature of the book store in the present case is virtually identical with the one involved in *Green.* However, the remaining two factors in the present case are vastly different.

The testimony in *Green* was that the viewing booths were closed merely by curtains, and that the officers who arrested the appellant had observed him through a three to five-inch gap between the curtain and the booth. It showed that the appellant had, before entering the booth where the sex act took place, walked down the hallway outside the viewing booths, opened curtains in other booths, and observed people in other booths. It also showed that the booths had red lights above their entrances which, when on, were to indicate that the booths were occupied. The appellant testified that the red light above the booth he occupied was not working.

Under those facts, the public had free access to the interior of the booths, even when they were occupied. Further, the appellant could be observed without entering the booth he occupied.

In addition, since the appellant in *Green* was aware of the free access to occupied booths and was aware that the light which signalled that his booth was occupied did not work, he could have no reasonable expectation of privacy in that booth, even when he closed the curtain.

By contrast, in the present case the testimony was that the viewing booth was completely enclosed. It had solid walls, a solid door with a bolt, and a solid ceiling. The door had to be closed in order to view the movie inside the booth. The only light within the booth came from the movie projector. When the appellant entered the booth, his back was against the door. Although the police officer testified that he did not actually see the appellant lock the door, he acknowledged that the door was completely closed and that the appellant could have locked the door without his knowledge. The appellant testified that he locked the door.

Under these facts, I would hold that the booth, at the time the sexual contact took place, was not a public place. The area was completely closed to public view. The appellant's testimony that he locked the door was not contradicted by the State's only witness. Both witnesses testified that the door was completely closed. Therefore, at the time the act took place, the public's access to the booth had been eliminated.

Further, by the act of closing and locking the door, the appellant had a reasonable expectation of privacy in the booth.

I find further support for my conclusion in *Buchanan v. State,* 471 S.W.2d 401 (Tex. Cr.App.1971). *Buchanan* involved two convictions for homosexual activity under the sodomy statute in the former penal code. In both cases, the prosecution was for an act of oral sodomy committed in a toilet stall in a public restroom. The appellant challenged the testimony of the police officers because, as he contended, their observations of him in the toilet stalls were unreasonable searches under the Fourth Amendment. The court stated:

"Police officers observed from concealed positions above the men's restroom in Sears Department Store and in Reverchon Park two separate acts of oral sodomy committed by the appellant while inside toilet stalls. What people seek to preserve as private, even in areas accessible to the public, may be constitutionally protected as the Fourth Amendment protects people, not places. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. A toilet stall in a public restroom is private to the extent it is offered to the public for private, however transient, individual use. *Britt v. Superior Court,* 58 Cal.2d 469, 24 Cal.Rptr. 849, 374 P.2d 817. The occupants are entitled to the modicum of privacy its design af-

fords. *Brown v. State,* 3 Md.App. 90, 238 A.2d 147. Where, however, the design is such that there is no right to expect privacy there can be no invasion of privacy. The men's restroom at the Sears store had commode stalls with doors which locked from the inside. A person inside such a stall with the door locked could be said to have some reasonable expectation of privacy. *State v. Bryant,* 287 Minn. 205, 177 N.W.2d 800. The commode stalls in Reverchon Park had no doors and were visible to all in the general restroom area. In such a design there is no reasonable expectation of privacy from viewers. *State v. Bryant, supra.* Hence, while the method of the alleged clandestine surveillance was identical in each instance, the appellant's expectation of privacy under the circumstances was not reasonable where no doors were provided for the stalls."

*Id.* 471 S.W.2d at 404. For that reason, the court reversed the conviction involving the Sears store and affirmed the case involving the park.

The court decided *Buchanan* on Fourth Amendment grounds. However, in my view that difference is not dispositive. The question involved in this case is closely related to, and interwoven with, Fourth Amendment considerations. Both the court of appeals in *Westbrook,* and the majority in this case, state that "[t]he public nature of the booth could not be changed by appellant, acting alone, closing and locking the door." Why not? If the act of closing and locking the door on a public restroom toilet stall can give one a reasonable expectation of privacy in that toilet stall, why doesn't the same act give one a reasonable expectation of privacy in a viewing booth? Furthermore, doesn't the act of closing and locking a door give one a reasonable expectation of privacy because the public is then excluded?

The majority seems to say that if the public once has access to a place, that place is forever a "public place." Does that then mean that even though the owner of the public book store involved in this case were to close and lock his front door, the store would remain a public place? The conclusion logically follows from the majority's statement, yet I think the majority would agree that the conclusion is absurd. Even places generally open to the public may become private in some circumstances. The most obvious of these circumstances is the act of closing and locking a door.

Once the appellant entered and locked the door to the viewing booth he had a reasonable expectation of privacy in the booth. He also changed the nature of the booth from a public area to a private area. That act of the appellant, acting alone, denied "the public or a substantial group of the public" the right of access to the interior as long as the door was closed and locked. For that period of time, the booth was no longer a public place within the meaning of V.T.C.A., Penal Code, Section 21.07.

I would hold the evidence was insufficient to show that at the time the act of sexual contact occurred the appellant was in a public place. For that reason, I would reverse this conviction and direct that a verdict of acquittal be entered.

I dissent.

CLINTON, McCORMICK and TEAGUE, JJ., join.