**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dannie BILLINGS,
Defendant–Appellant.**

**No. 87–2880.**

United States Court of Appeals,
Tenth Circuit.

Sept. 30, 1988.

Donald A. Brenner, Denver, Colo., for defendant-appellant.

Bruce F. Black, Asst. U.S. Atty. (Michael J. Norton, U.S. Atty., with him on the brief), Dist. of Colorado, Denver, Colo., for plaintiff-appellee.

Before McKAY, BARRETT, and EBEL, Circuit Judges.

PER CURIAM.

On June 16, 1987, two Denver police officers were on duty at the Stapleton International Airport as part of the Stapleton narcotics unit. As the officers observed passengers arriving from Miami, Florida—considered to be a source city for drugs—they observed the defendant, wearing a distinctive turquoise jumpsuit, leave the plane. They watched the man as he walked toward the main terminal. He then stopped suddenly, turned around, looked over his shoulder, and entered a nearby restroom.

The officers' suspicions aroused, one of them entered the restroom to use the facilities, whether by pretext or otherwise is unimportant. While standing a few feet away at a place where any member of the public would normally stand, the officer saw the unusual turquoise pant legs, that he had just observed on the defendant, between the bottom of the stall and the floor. Although the door to the stall remained closed, the pant legs were visible in the approximately one-foot opening above the floor.

The officer saw the defendant pull up the pant of his left leg. As he tugged at his

sock, a clear bag with a white substance was openly displayed, taped to the inside of his left ankle. When the defendant left the restroom the officers followed him. They identified themselves and asked him for identification. The defendant had no identification on him, but he verbally identified himself and agreed to let the officers search the bag he was carrying. The officers found two plastic bags of white powder. At that point the defendant fled, resisted arrest, was subdued, and finally was placed under arrest. The officers then performed a search incident to the arrest. This search revealed two more packages of cocaine taped to his ankles.

The defendant on appeal claims only that the request for identification and subsequent search were invalid because they flowed from the officer's sighting of cocaine on the defendant's pant leg in the bathroom stall. It is the defendant's contention that when the officer looked at the stall, he violated defendant's reasonable expectation of privacy; therefore, any later evidence which flowed from that initial observation was fatally tainted.

The only cases defendant cites in support of this argument are state cases which are all distinguishable in that each involved an officer using extraordinary methods to peer over a partition or down into a bathroom stall in order to see what no ordinary observer could otherwise see. *See, e.g., State v. Biggar,* 716 P.2d 493 (Haw. 1986); *People v. Kalchik,* 160 Mich.App. 40, 407 N.W.2d 627 (Mich.App.1987); *People v. Mercado,* 68 N.Y.2d 874, 508 N.Y.S.2d 419, 501 N.E.2d 27 (Ct.App.1986); *People v. Triggs,* 8 Cal.3d 884, 106 Cal.Rptr. 408, 506 P.2d 232 (Cal.1973).

Leaving aside any other issues which might have been raised in this case, we conclude that under *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring), the defendant could have no reasonably objective expectation of privacy despite what he might have subjectively believed. *See also New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (adopting the critical elements of Harlan's concurrence in *Katz*).

We do not address the issue of a person's reasonable expectations within the enclosed portion of the stall which would not be observable by the ordinary patron of the restroom. We limit our holding to what can be observed by any ordinary patron of a public restroom. It is not necessary to this holding to pass on the possible implications of the so-called "drug courier" profile as a justification for surveillance of the defendant, or even the issue of whether or not the officer entered the restroom truly to use the facilities or merely on a pretext. In any event, once the officer was in the public restroom, at a place where patrons are normally found, he was plainly able to see the contraband which defendant had taped to his leg, in the one-foot open area between the stall and the floor.

We hold that the trial court properly denied defendant's motion to suppress the police officer's observations of the defendant's feet and legs, plainly visible, in the gap between the restroom stall and the floor, because the defendant had no reasonable expectation of privacy in that open area of the stall where any patron of this public restroom could easily see.

AFFIRMED.