Filed 6/21/16  Certified for Publication 7/18/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.H., a Person Coming Under the Juvenile Court Law. | D067616 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J235668) |
| v. | |
| M.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Kenneth K. So and Roderick Ward Shelton, Judges.  Affirmed.

Appellate Defenders, Inc., and Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting, Deputy Solicitor

General, Eric A. Swenson, Scott C. Taylor and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

Technology advancements have resulted in many high school students carrying smartphones, which have applications to record and upload videos to social media for immediate viewing by their peers. In this case, 16-year-old M.H. used his smartphone to surreptitiously record a fellow high school student, Matthew B., in a school bathroom stall while Matthew was either masturbating or jokingly pretending to do so. The video, taken inside the bathroom, but about 20 feet away from the bathroom stall, did not show Matthew's face, but did reveal his distinctive socks and shoes, which were visible in the gap between the stall wall and the floor. M.H. uploaded the 10-second video to his Snapchat application with the caption, "I think this dude is jacking off" or some similar title.

M.H. intended the video to be funny and to get a laugh. But tragically, about two weeks later, Matthew took his own life, stating in a suicide note, "I can't handle school anymore and I have no friends."[1]

The San Diego County District Attorney's Office filed a juvenile delinquency petition under Welfare and Institutions Code section 602 alleging M.H. engaged in an

---

[1] Matthew's suicide note also states, "P.S. I've been planning this for months now." The causal relationship, if any, between M.H.'s video and Matthew's suicide is not before us and we express no opinion on that issue.

2

unauthorized invasion of privacy by means of a cell phone camera in violation of Penal Code[2] section 647, subdivision (j)(1) (hereafter section 647(j)(1)), a misdemeanor.[3]

Following a contested adjudication hearing, the court found true the allegation that M.H. violated section 647(j)(1). The court sentenced M.H. to probation on numerous conditions, including several restricting his use of social media. Addressing M.H., the court stated, "We are going to come back in 60 days. I'm going to see how you are doing. If I have any more problems with you, you are going into custody."

On appeal, M.H. first contends no substantial evidence supports the juvenile court's finding that he had the requisite specific intent "to invade Matthew's privacy" as required by section 647(j)(1). Specifically, M.H. contends Matthew had no reasonable expectation of privacy in the bathroom stall because Matthew's distinctive shoes were visible under the stall's wall and Matthew was audibly moaning, which anyone in the bathroom could have heard. Second, for the first time on appeal, M.H. also contends section 647(j)(1) incorporates by reference the elements of the tort of invasion of privacy, and assuming that to be true, he asserts there is a "newsworthy" defense that immunizes

---

[2]     All statutory references are to the Penal Code unless otherwise specified.

[3]     Section 647(j)(1) defines disorderly conduct as occurring when a person commits the following acts: "Any person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, camcorder, or mobile phone, the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside. This subdivision shall not apply to those areas of a private business used to count currency or other negotiable instruments."

him from criminal liability in this case. Third, and also for the first time on appeal, M.H. contends that, as applied here, section 647(j)(1) violates his First Amendment rights.

We affirm. A student in a high school bathroom stall reasonably expects he will not be videoed and have that video disseminated on social media. Matthew did not forfeit that right merely because his socks and shoes could be seen and his voice could be heard by others in the bathroom. Matthew may have run the risk that people in the bathroom would tell others what they witnessed there. But that is a far cry from expecting his conduct would be electronically recorded and broadcasted to the student body. Thus, M.H.'s main appellate argument fails because the right to privacy is not one of total secrecy, but rather the right to control the nature and extent of firsthand dissemination. (*Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 235 (*Shulman*).) The ""mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone."" (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 291 (*Hernandez*).)

M.H.'s contention that section 647(j)(1) incorporates the tort elements of invasion of privacy is forfeited because his attorney took the exact opposite position in the juvenile court, asserting, "This is not a tort case. This is a crime." In any event, even if not forfeited, the argument is unavailing because neither the text nor the legislative history of section 647(j)(1) supports M.H.'s argument. We also conclude M.H. forfeited his claim that section 647(j)(1) violates his First Amendment rights because M.H. did not raise this constitutional issue in the juvenile court. (*People v. Ervine* (2009) 47 Cal.4th 745, 783 [constitutional claim forfeited because appellant did not properly raise it below]; *People*

*v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [First Amendment claim forfeited by failure to raise it below].)

FACTUAL BACKGROUND

In 2013 M.H. and Matthew attended University City High School. At the time, M.H. was in 11th grade, and Matthew was in ninth grade.

On a Friday afternoon, Matthew and Erik J., friends since sixth grade, entered the boys' restroom. The entrance doors to the bathroom were always kept open to deter vandalism; however, people outside could not see the bathroom's interior. Inside, the bathroom has a row of five sinks along one wall, and eight urinals and two stalls on the opposite side. Only one of the two stalls, the one farthest from the entrance, has a door. Nevertheless, because of the way the room is configured, someone standing near the urinals or sink could only see the side of the doorless stall.

Upon entering the bathroom, Erik entered the far stall, the one with the door, and closed it. Matthew went into the other stall, the doorless one, and remained standing, with his feet facing the toilet. Matthew began making moaning sounds. Erik did not think Matthew was actually masturbating, but thought it was "a joke" because, as Erik testified, Matthew "was like that. Like, he would just mess around."

M.H. entered the restroom while Erik and Matthew were still inside their respective stalls. M.H. "heard some noises coming from one of the toilet stalls, noises that sounded like somebody was masturbating." While standing near the bathroom sinks, about 16 to 25 feet away from the stalls, M.H. used his smartphone to record a 10-second video of Matthew in the stall, making "easily audible" groaning sounds. M.H. did not

5

make any noise or say anything to indicate he was there, and made no attempt to get anyone's permission to take the video.

The video showed Matthew's distinctive socks and shoes, visible in the gap between the stall wall and the floor. M.H. did not see Matthew's face and he did not know who was in the stall he was recording.

When Erik exited his stall, he did not see anyone in the bathroom except Matthew, who was standing near a sink. Erik and Matthew did not discuss the matter and returned to their respective classes.

After leaving the bathroom, M.H. uploaded the video to his Snapchat "stories" application with the caption, "I think this dude is jacking off" or some similar title. Snapchat is a smartphone application that allows users to send pictures and videos (not to exceed 10 seconds in length) to friends or followers. Unlike other social media applications, videos uploaded to Snapchat stories disappear after 24 hours. M.H. thought the video was funny and he uploaded it to "get a laugh."

While at the high school's football game that Friday evening, M.H. approached Erik and another student, Ezekiel A. M.H. asked Erik if he was "the kid in the rest room?" Erik said he did not know what M.H. was talking about. M.H. logged into his Snapchat application on his smartphone, and showed Erik and Ezekiel the bathroom video. Ezekiel testified the video showed a person's feet in one of the stalls and "a noise, like if someone was masturbating." Ezekiel recognized Matthew as the person in the stall because "Matt always . . . wore his black shoes with Adidas socks, ankle socks." Erik

6

also recognized his own shoes in the video in the adjacent stall, and Erik told M.H. that Matthew was the person in the other stall.

Three days later on Monday, Ezekiel told Matthew, "There's a video of you that shows that you might be masturbating in the rest room." Matthew replied that he was just joking around and trying to make people laugh.

It is not known how many people saw the video. M.H. told the police he had "a lot" of Snapchat followers, but "[i]t's not like a million." Because M.H. posted the video on Snapchat stories, the video disappeared after 24 hours. In M.H.'s dispositional hearing, Matthew's mother said that when Matthew returned to school that Monday, "everyone was talking about him in the video."[4]

Approximately two weeks later, Matthew committed suicide. In a handwritten note, Mathew expressed his love for his family and stated, "I have killed myself. I can't handle school anymore and I have no friends. I don't like my life." Matthew's note also states, "I've been planning this for months now."

On the day of Matthew's funeral, M.H. confronted Ezekiel and threatened to "kick his ass" if Ezekiel did not stop telling people M.H. took the video. Ezekiel reported the threat to school officials.

Subsequently, the vice principal, together with M.H.'s basketball coach, and a San Diego Unified School District police officer, met with M.H. and Ezekiel to address the

---

4    Matthew's mother addressed the court only at the dispositional hearing. She did not testify at the adjudication hearing and her statement quoted in the text is therefore not evidence, but is merely provided here as background context.

issue of M.H.'s threat. After that issue was apparently resolved and Ezekiel left the room, M.H. confessed he recorded and uploaded the video. M.H. said he made and uploaded the video because he thought it was funny that someone in the stall seemed to be masturbating. M.H. told police "he felt terrible for what had happened," never intended the video to cause harm, and did not know who was in the stall when he took the video.

M.H. gave police his smartphone and consented to a search of its contents. However, police were unable to recover the video. Later, with Erik's assistance—Erik saw the video on M.H.'s smartphone at the football game—the district attorney's office prepared a re-creation of the video, which the court received into evidence without objection.

## DISCUSSION

### I. *THE COURT'S TRUE FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE*

M.H. first contends that insufficient evidence supports the juvenile court's finding that he violated section 647(j)(1). We reject this contention.

#### A. *Standard of Review*

When assessing a challenge to the sufficiency of the evidence supporting a true finding, we apply the substantial evidence standard of review, under which we view the evidence "in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) We do not reweigh

8

the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

B. *Matthew's Expectation of Privacy*

1. *Reasonable expectation of privacy in a public restroom stall*

A violation of section 647(j)(1) occurs only if the actor has the specific intent "to invade the privacy" of someone in a statutorily enumerated place, including a bathroom. M.H. contends no substantial evidence supports the court's finding he violated section 647(j)(1) because M.H. only recorded what Matthew exposed to public view—his feet through the gap between the stall wall and the floor, and the sounds Matthew was making. Citing *Tily B., Inc. v. City of Newport Beach* (1998) 69 Cal.App.4th 1 (*Tily B.*), M.H. contends there is no right to privacy in what may be observed from common areas in public restrooms

To begin with, article I, section 1 of the California Constitution explicitly deems privacy an inalienable right by stating, "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

The bathroom, including a public bathroom stall, is perhaps the epitome of a private place. Contrary to M.H.'s assertions, for over 50 years California case law has ensured that persons in a public toilet may reasonably expect they are not being secretly watched. For example, in *Britt v. Superior Court* (1962) 58 Cal.2d 469 (*Britt*), a police officer stationed himself above the ceiling of a department store's men's room, where he

9

could peer through vents to see two men having sex in the toilet stalls below. Although the stalls were enclosed by partitions and a door, the enclosures stopped approximately 12 inches from the floor. (*Id.* at p. 471.) The Supreme Court held the covert surveillance violated privacy rights, stating, "Man's constitutionally protected right of personal privacy not only abides with him while he is the householder within his own castle but cloaks him when as a member of the public he is temporarily occupying a room— *including a toilet stall*—to the extent that it is offered to the public for private, however transient, individual use." (*Id.* at p. 472, italics added.)

The Supreme Court's subsequent decision in *People v. Triggs* (1973) 8 Cal.3d 884 (*Triggs*), disapproved on other grounds in *People v. Lilienthal* (1978) 22 Cal.3d 891, 896, footnote 4, is even more on point because it involved surveillance of conduct inside a public restroom stall with *no door*. The police officers in *Triggs* entered the plumbing access area of a city park men's room and used an overhead vent to observe oral copulation within a doorless stall. (*Id.* at p. 888.) Rejecting the argument that a person in a doorless public bathroom stall has no expectation of privacy, the court stated, "The expectation of privacy a person has when he enters a restroom is reasonable and is not diminished or destroyed because the toilet stall being used lacks a door." (*Id.* at p. 891.)

M.H. seeks to distinguish *Britt* and *Triggs* on the grounds that the observations in both those cases were made directly into a bathroom stall, whereas M.H. was viewing Matthew's conduct outside the stall, in the common bathroom area. However, in *Triggs*, the court stated that the reasonable expectation of privacy in a public bathroom stall

10

exists "even if the interior of the stall might have been open to view from areas accessible to the public." (*Triggs, supra,* 8 Cal.3d at p. 892.)

In his reply brief, M.H. cites the following cases as standing for the proposition there is no expectation of privacy when using a doorless public restroom stall: *People v. Crafts* (1970) 13 Cal.App.3d 457; *People v. Heath* (1968) 266 Cal.App.2d 754; *People v. Roberts* (1967) 256 Cal.App.2d 488; *People v. Maldonado* (1966) 240 Cal.App.2d 812; *People v. Hensel* (1965) 233 Cal.App.2d 834; *People v. Young* (1963) 214 Cal.App.2d 131; and *People v. Norton* (1962) 209 Cal.App.2d 173. However, in *Triggs*, the Supreme Court cited these intermediate appellate court opinions—not with approval, as M.H. suggests—but rather with disapproval to the extent they incorrectly state that an occupant of a doorless restroom stall has no reasonable expectation of privacy with respect to conduct that could be viewed from a common area in the bathroom. (*Triggs, supra,* 8 Cal.3d at pp. 890-891.)[5]

M.H. also relies on *Tily B., supra,* 69 Cal.App.4th 1, a case involving an adult entertainment business, where a city ordinance required an attendant to be stationed in the restroom "to prevent specified activities."[6] (*Id.* at p. 21.) Rejecting an argument that the

_____

[5] M.H.'s reply brief also cites *United States v. Billings* (10th Cir. 1988) 858 F.2d 617, but that case is distinguishable because there police followed a drug courier into an airport restroom, and, once inside the restroom, the officer, standing a few feet away from the stall, saw a drug parcel taped to the courier's leg. (*Id.* at pp. 617-618.) M.H. did not observe Matthew enter the bathroom, and Matthew's conduct in no way resembles that of the drug courier in *Billings*.

[6] In describing those "specified activities," the court in *Tily B.* only stated, "They are just what you would imagine." (*Tily B., supra,* 69 Cal.App.4th at p. 21, fn. 17.)

11

ordinance violated patrons' right of privacy, the court in *Tily B.* stated, "Whatever individual sensibilities, there is no constitutional right of privacy in the restrooms of a place of public accommodation . . . ." (*Id*. at p. 24.) However, that passage, when read in context, refers to a hypothetical right of patrons to be alone in a public restroom to conduct illegal activities, and did not address the very distinct issue here, involving the right to not have one's solitary activity within a bathroom stall surreptitiously recorded and then disseminated on social media.

M.H.'s reliance on *In re Deborah C.* (1981) 30 Cal.3d 125 is also unavailing. There, a juvenile took several department store items and a large plastic bag into a closed fitting room. A security officer stationed outside the room saw the defendant stuff merchandise into her bag from the two-foot gap above and below the fitting room door. (*Id.* at p. 130.) The court concluded the defendant had no reasonable expectation of privacy with regard to these events in plain view. However, *Deborah C.* is also off point because it does not involve secretly recording a bathroom video with the intent to disseminate the recording on social media.

2. *Privacy expectations can be reasonable, even if they are not absolute*

Even if Matthew might otherwise have had a reasonable expectation of privacy in the bathroom stall, M.H. contends Matthew "waived that expectation" by "making loud obscene noises" and by "deliberately attracting public attention by making loud masturbation noises." We disagree. There are degrees and nuances to expectations of privacy. The possibility of being seen or overheard by others in the bathroom does not

12

render unreasonable a student's expectation that his conduct in a bathroom stall will not be secretly recorded and uploaded to social media.

The California Supreme Court has held that a person may have a reasonable expectation of privacy against electronic recording, even if the person expects conduct or conversation to be overheard by others. For example, in *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907 (*Sanders*), the plaintiff was employed as one of many telepsychics who gave readings to customers who telephone the employer's 900 number. Each telepsychic took his or her calls in a three-sided cubicle, of which there were about 100 in the large work area. (*Id.* at pp. 911-912.) The defendant, an investigative reporter with American Broadcasting Company, obtained employment as a telepsychic and secretly video and audiotaped her conversations with coworkers using a small hidden camera and microphone. (*Id.* at p. 912.) The plaintiff in *Sanders* sued for violation of privacy. Much like M.H. argues Matthew could have no reasonable expectation of privacy because his groaning could be heard by others in the bathroom, in *Sanders* the defendant argued there could be no reasonable expectation of privacy because the workplace conversations could be overheard by others in the shared space. (*Id.* at p. 911.) The court rejected that argument because there is a vast distinction between being overheard, and being surreptitiously recorded.

In finding a reasonable expectation of privacy, the Supreme Court in *Sanders* explained, "[P]rivacy . . . is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that privacy

13

one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law." (*Sanders, supra,* 20 Cal.4th at p. 916.)

The *Sanders* court held a person may reasonably expect his or her conversations will not be electronically recorded, even though he or she had no reasonable expectation the conversation would not be overheard when it was made. The court concluded, "In an office or other workplace to which the general public does not have unfettered access, employees may enjoy a limited, but legitimate expectation that their conversations and other interactions will not be secretly videotaped by undercover television reporters, even though those conversations may not have been completely private from the participants' coworkers." (*Sanders, supra,* 20 Cal.4th at p. 911.) The court added, "[T]he possibility of being overheard by coworkers does not, as a matter of law, render unreasonable an employee's expectation that his or her interactions within a nonpublic workplace will not be videotaped in secret by a journalist." (*Id.* at p. 923.) This is because ""secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements."" (*Id.* at p. 915.)

Applying *Sanders,* courts have rejected the all-or-nothing approach to privacy that M.H. advocates in this case—and instead have examined the physical area where the act occurred, as well as the nature of the activities commonly performed in such places to determine the contours of a reasonable expectation of privacy. For example, in *Hernandez, supra,* 47 Cal.4th 272, the Supreme Court considered privacy expectations in a lawsuit where employees sued their employer for installing secret surveillance cameras

14

in offices to monitor unauthorized computer use. Addressing the range of potential intrusions on privacy, the Court noted that at one end of the spectrum are places "conducted in an open and accessible space, within the sight and hearing not only of coworkers and supervisors, but also of customers, visitors, and the general public." (*Id.* at p. 290.) Meanwhile, at the other end of the spectrum where employees maintain privacy interests "are areas in the workplace subject to restricted access and limited view, and reserved exclusively for performing bodily functions or other inherently personal acts." (*Ibid*.)

In *Hernandez,* the court was particularly concerned with the "intrusive effect" of "hidden cameras" in "settings that otherwise seem private." (*Hernandez, supra,* 47 Cal.4th at p. 291.) The court concluded that such recording "denies the actor a key feature of privacy—the right to control the dissemination of his image and actions. [Citation]. We have made clear that the '"mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone."'" (*Ibid.*)

*Shulman, supra,* 18 Cal.4th 200, is also instructive. There, the Supreme Court held that an accident victim could have a reasonable expectation of privacy at the accident scene and in the interior of a rescue helicopter, even though she lacked complete privacy due to the presence of medical professionals. (*Id.* at pp. 237-238.) The court stated, "[T]he last thing an injured accident victim should have to worry about while being pried from her wrecked car is that a television producer may be recording

15

everything she says to medical personnel for the possible edification and entertainment of casual television viewers." (*Id.* at p. 238.)

*Sanders, Shulman,* and *Hernandez* demonstrate that even if Matthew intended a limited number of people to hear and partially see him in the bathroom, he did not waive or forgo the right to expect he would not be secretly recorded in a video distributed over social media. Adolescence was difficult enough before there were smartphones and social media. The last thing a high school student in a bathroom stall should have to worry about is that someone may be secretly recording everything done and uttered there for the possible entertainment of fellow students. (See *Shulman, supra,* 18 Cal.4th at p. 238.) As the Supreme Court stated in *Hernandez,* "[T]he 'unblinking lens' can be more penetrating than the naked eye with respect to 'duration, proximity, focus, and vantage point.'" (*Hernandez, supra,* 47 Cal.4th at p. 291.) Thus, while section 647(j)(1) can be violated just by watching with the naked eye, the statute also includes situations like the one here—where privacy intrusions consist of the indignity and embarrassment of being electronically recorded in a bathroom stall. Although anyone present in the bathroom might tell others the sights and sounds observed there, that does not mean Matthew took the risk that what was heard and seen would be disseminated by a recording "in full living color" on social media. (*Sanders*, *supra*, 20 Cal.4th at p. 915.)

C. *Section 647(j)(1) Does Not Incorporate the Tort of Invasion of Privacy*

M.H. contends section 647(j)(1) requires "specific intent to commit an invasion of privacy." From this premise, he argues that section 647(j)(1) incorporates the elements of the *tort* of invasion of privacy, and therefore he claims there is a "newsworthy" defense

16

built into the law. M.H.'s attorney asserts that as a matter of law, M.H. cannot have violated section 647(j)(1) because recording a high school student masturbating, or pretending to masturbate, in a school restroom stall is a newsworthy event of legitimate public interest.

However, M.H. not only failed to make this argument in the juvenile court, his attorney actually argued the contrary position there. When the court asked M.H.'s lawyer whether it was reasonable for a bathroom user to expect not to be videoed, counsel replied, "I think the law of torts cover that, but I don't think this statute covers that. I definitely think the law of torts encompasses those issues, but we're talking about a crime here of the Penal Code." At another point in the hearing, M.H.'s lawyer unequivocally asserted, "This is not a tort case."

"A fundamental tenet of our system of justice is the well-established principle that a party's failure to assert error or otherwise preserve an issue at trial ordinarily will result in forfeiture of an appeal of that issue." (*People v. McKinnon* (2011) 52 Cal.4th 610, 636.) These ordinary rules of forfeiture take on added significance here, because M.H. is not only attempting to assert an argument for the first time on appeal, but that new argument is inconsistent with the position he took in the trial court. It is, therefore, particularly inappropriate for M.H. to complain on appeal that the court erred in not adopting tort elements into section 647(j)(1), when M.H.'s lawyer conceded on the record the issue he now disputes.

In any event, even if we were to consider whether section 647(j)(1) incorporates the tort of invasion of privacy, we would reject such a contention.

17

"[T]he proper goal of statutory construction 'is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning. When the statutory language is clear, we need go no further. If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, legislative history, the statutory scheme of which the statute is a part, contemporaneous administrative construction, and questions of public policy.'" (*People v. Ramirez* (2009) 45 Cal.4th 980, 987.)

Contrary to M.H.'s assertions, the plain language of section 647(j)(1) does not incorporate by reference the elements of privacy torts. The statute provides that criminal liability does not attach unless the defendant acted "with the intent to invade the privacy of a person or persons inside." Nothing in those words incorporates by reference an entire body of civil tort law into the criminal statute. As the Attorney General correctly notes, the phrase "invade the privacy" does not connote the tort of invasion of privacy, and many courts have used that phrase when addressing Fourth Amendment claims without ever discussing privacy tort law. (See, e.g., *Blair v. Pitchess* (1971) 5 Cal.3d 258, 273 ["'[i]f the Sheriff cannot invade the privacy of a home without a warrant when the state interest is to prevent crime'"], superseded by statute as explained in *Simms v. NPCK Enterprises, Inc.* (2003) 109 Cal.App.4th 233, 242; *People v. Rogers* (1986) 187 Cal.App.3d 1001, 1009 ["The extent of invasion of privacy is not unreasonable in the circumstances."].)

Moreover, section 647(j)(1) cannot reasonably be construed to incorporate the specific intent to commit the tort of invasion of privacy because that tort is actually an

18

umbrella term for four different common law privacy torts: "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 24; see 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, §§ 658-659, pp. 963-967, §§ 664-665, pp. 973-974, §§ 673-675, pp. 987-992, § 676, pp. 993-994.) If the Legislature intended the phrase "intent to invade the privacy" to be code for incorporating by reference the various elements and defenses of four common law privacy torts, it could not have chosen a more obscure and obtuse way of doing so.

Additionally, we have examined the legislative history surrounding the 1994 enactment of section 647(j)(1) pursuant to a request for judicial notice the Attorney General filed and M.H. did not oppose.[7] The bill that led to the enactment of section 647(j)(1) was introduced "to correct a problem in San Diego where a person was caught peeking into the woman's bathroom through a hole in the wall" at the airport and "the case could not be prosecuted because no law outlawed this activity." (Sen. Com. on Judiciary, Analysis of Assem. Bill 116X (1993-1994 Reg. Sess.) as amended June 28, 1994.) The phrase "with the intent to invade the privacy" (*ibid*.) was inserted in the assembly bill after the American Civil Liberties Union and the California Attorneys for Criminal Justice objected to an earlier version that criminalized the act of loitering "in public areas where people have a right to be . . . ." (Assem. Com. on Public Safety,

---

[7] On March 22, 2016, we granted the Attorney General's request for judicial notice.

19

Analysis of Assem. Bill 116X (1993-1994 Reg. Sess.) as amended May 9, 1994; Assem. Amends. to Assem Bill No. 116 (1993-1994 1st Ex. Sess.) May 9, 1994 & June 28, 1994.)  There is nothing in the legislative history provided suggesting "with the intent to invade the privacy" was also added to incorporate civil tort privacy defenses into the statute.  Despite the discussion of this legislative history in the Attorney General's brief, M.H.'s opening and reply briefs do not dispute any of these assertions or cite any contrary authority.[8]

## II.  *FIRST AMENDMENT CLAIM FORFEITED*

For the first time on appeal, M.H. contends the finding he violated section 647(j)(1) should be vacated because, as applied, the statute violates his right to freedom of expression under the First Amendment of the United States Constitution.  However, the Attorney General notes, and M.H. does not dispute, he failed to raise a constitutional challenge to this statute in the juvenile court.[9]  "All issues, even those involving an alleged constitutional violation, are subject to the rule of forfeiture, and a defendant's failure to raise the issue before the trial court will generally result in the appellate court's refusal to consider it."  (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347, fn. 9.)  Considering an issue for the first time on appeal is often unfair to the trial court, unjust to

---

[8]    Having rejected M.H.'s assertion that section 647(j)(1) incorporates civil tort law, it is unnecessary to consider his related argument that his video of Matthew in the bathroom stall was newsworthy or of public interest.

[9]    M.H.'s reply brief does not address the Attorney General's argument that the constitutional issue is forfeited.  His 31-page reply brief devotes only two short paragraphs to the constitutional issue, in which he "stands on the arguments" made in his opening brief.

the opposing party, and contrary to judicial economy because it encourages the embedding of reversible error through silence in the trial court. Nevertheless, courts may exercise discretion to consider constitutional challenges to penal statutes for the first time on appeal where the arguments are legal, based on undisputed facts, and involve review of abstract and generalized legal concepts. (*Ibid.*)

We decline to exercise our discretion to consider M.H.'s new claim of constitutional error in this case because we disagree it raises only a pure question of law. Even M.H.'s own argument makes a fact-based analysis necessary. For example, M.H. argues his recording of Matthew in the bathroom stall was "a matter of concern to his school community", a matter of "public interest," and constituted "news gathering." He contends Matthew was engaged in an unlawful act. Not surprisingly, the Attorney General contends exactly the opposite, stating the evidence does not show Matthew committed any unlawful act, and M.H.'s conduct was designed and intended not to report a crime or other newsworthy event, but rather to invade Matthew's privacy to ridicule, embarrass, and deprive him of dignity in front of his peers. M.H. never reported the bathroom behavior to school authorities or law enforcement until after Matthew committed suicide. In the absence of a complete factual record made in the trial court on such issues, it would be imprudent to decide constitutional issues for the first time on appeal.

DISPOSITION

The order is affirmed.

NARES, Acting P. J.

WE CONCUR:


O'ROURKE, J.


PRAGER, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22

Filed 7/18/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.H., a Person Coming Under the Juvenile Court Law. | D067616 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J235668) |
| v. | |
| M.H., | ORDER GRANTING PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed June 21, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c) and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

NARES, Acting P. J.

Copies to:  All parties