Filed 4/28/22  In re L.C. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re L.C., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E078154 |
| Plaintiff and Respondent, | (Super.Ct.No. J283406) |
| v. | OPINION |
| B.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Dawn M. Martin, Deputy County Counsel, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

In this dependency case, defendant and appellant B.C. (mother) appeals from an order terminating her parental rights over her child, L.C. She argues that the juvenile court should have instead applied the beneficial parent-child relationship exception and selected legal guardianship as the child's permanent plan. (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i).)[1] Mother further maintains that alleged father, T.R., was denied due process when he was not noticed of the dependency proceedings and the court failed to afford him the protections of the Servicemembers' Civil Relief Act (50 U.S.C. § 3901 et seq.) (SCRA). Finding no error, we affirm.

# II.

## BACKGROUND

When L.C. was 13 months old in December 2019, mother contacted law enforcement to report that her "pimp," "KB," took her son and would not let her see him until she made money by prostituting herself. Police found L.C. at KB's mother's home in Victorville. He had eczema on his legs, arms, neck, and back that was in various stages of healing. Mother was not able to provide an address or plan for living arrangements. Mother said that the child's father was T.R. and she was in the process of

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

moving out of his house. She reported that T.R. was on a military deployment in Korea for a year.[2]

San Bernardino County Children and Family Services (CFS) filed a dependency petition for L.C., alleging as to mother that he came within section 300, subdivision (b)(1) (failure to protect). The petition further alleged the child came within section 300, subdivision (g), based upon the alleged father's failure to support the child and his whereabouts being unknown. The child was placed with his godmother, Ms. G.

At a December 2019 detention hearing, the juvenile court ordered that the child be detained in the home of Ms. G.

In January 2020, at the jurisdictional/dispositional hearing, the juvenile court found that it had jurisdiction based on failure to protect (§ 300, subd. (b)(1)) and, as to T.R. only, failure to support (*id.*, subd. (g).) It dismissed the subdivision (g) allegation that T.R.'s whereabouts were unknown since the court was aware he was in the military. It removed the child from mother's custody and ordered reunification services. It found that T.R. was not entitled to reunification services. The court ordered supervised visitation for mother one time a week for two hours.

Mother received reunification services from January 2020 until June 2021. CFS reported that she did not complete her court-ordered case plan and did not benefit from the services she was provided. She "struggled to acknowledge how past experiences and behaviors . . . impacted her child and placed him at risk." Mother also had "difficulties

---

[2] During an investigation for general neglect in March 2019, T.R. had reported he was not L.C.'s biological father but saw the child as his own.

comprehending why CFS removed her child from her care" and "identifying warning signs for potential harm and individuals that may not have her interest in mind."

At the 18-month review hearing in June 2021, the court terminated reunification services and set a section 366.26 hearing. The court ordered supervised visitation, one time a week for two hours each visit. It authorized CFS to increase the frequency and duration of the visits.

In November 2021, at the section 366.26 hearing, mother's counsel asked the juvenile court to find that the beneficial parent-child relationship exception applied.[3] The juvenile court rejected the request, commenting: "As to the parental-bond exception, while Mom has had positive visits, lately those visits have been inconsistent. [¶] The child turned three yesterday and was removed at 13 months old. So while there is a positive relationship with the mother, it's not substantial to the point that there is a parental-bond exception to the preference for adoption for a child this young. [¶] So I am going to terminate parental rights."

The juvenile court further found that the child was adoptable. It therefore terminated parental rights.

---

[3] Mother appeared telephonically for the section 366.26 hearing.

DISCUSSION

A.  *Beneficial Parent-Child Relationship Exception*

Mother contends the juvenile court erred by selecting adoption as the child's permanent plan, arguing that the juvenile court should have instead concluded that the beneficial parent-child exception to adoption applied.  (§ 366.26, subd. (c)(1)(B)(i).)  We are not persuaded.

1.  *Additional Factual Background*

The only evidence submitted at the section 366.26 hearing was the social worker's section 366.26 report dated October 18, 2021.  We confine our consideration to this evidence.  (*In re L.A.-O.* (2021) 73 Cal.App.5th 197, 230, 233-234; see *In re Zeth S.* (2003) 31 Cal.4th 396, 405 [" 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' "]; see also Cal. Rules of Court, rule 5.725(d); § 366.26, subd. (b).)  That evidence showed the following.

As of the date of the section 366.26 hearing in November 2021, L.C. was three years old.  He had been in his placement for almost two years, or since December 2019.  Mother's visitation schedule allowed her to visit once a week for two hours.

The social worker supervised weekly visitation between mother and L.C. from June 23, 2021, to July 14, 2021.  During the visits, mother was appropriate with the child.  She provided him with snacks and toys.  She read to the child and engaged him in

learning activities. Mother changed L.C.'s diapers and displayed affection. During a visit, the child was observed to be receptive to his mother's hug.

In August 2021, mother informed the social worker that someone at the homeless facility where she lived tested positive for COVID-19 and the facility went on lockdown/quarantine. She requested video visits due to the caregiver's sister testing positive for COVID-19.

On August 30, 2021, the social worker spoke with mother. Mother said she had not visited L.C. but was available to visit on Monday or Tuesday afternoons. On September 3, 2021, when the social worker spoke with mother to arrange visitation, mother said, "my schedule is busy," and "I will contact you on Monday" to schedule a visit with the child. On September 20, 2021, mother contacted the social worker and said she was able to visit the child after September 27, 2021, because she did not have money for transportation. The social worker arranged for visitation with the mother and child for September 28, 2021, at the Victorville CFS office.

The social worker opined that L.C. was adoptable and was placed with a caregiver who wanted to adopt him. Ms. G. had been involved in his life since he was three months old and looked after him on and off prior to his removal. She was prepared to meet his social, medical, psychological, and financial needs. She loved him and already thought of him as her own child.

Both L.C. and Ms. G. developed a mutual attachment. Ms. G. was dedicated to the child and committed to raising him to adulthood. The social worker recommended that the child be freed from his parents in order to be placed for adoption.

6

2. *Applicable Law*

When a juvenile court finds by clear and convincing evidence the child is adoptable at a section 366.26 hearing, the court is generally required to terminate parental rights and order the child placed for adoption.  (§ 366.26, subd. (c)(1).)  Adoption, where possible, is the permanent plan preferred by the Legislature; however, there are exceptional circumstances whereby long-term foster care or legal guardianship are considered.  (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574 (*Autumn H.*); see *In re Celine R.* (2003) 31 Cal.4th 45, 53 ["The statutory exceptions merely permit the court, in *exceptional circumstances* [citation], to choose an option other than the norm, which remains adoption."].)  One such circumstance is the beneficial parent-child relationship exception set forth in section 366.26, subdivision (c)(1)(B)(i).  (*In re Caden C.* (2021) 11 Cal.5th 614, 625 (*Caden C.*).)  This exception applies where "[t]he court finds a compelling reason for determining that termination would be detrimental" because "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)

In *Caden C.*, the California Supreme Court confirmed that the parental benefit necessary to overcome the presumption in favor of adoption is the standard set forth in *Autumn H.*  The Court discerned three elements the parent must prove by a preponderance of the evidence to establish the beneficial parent-child relationship exception:  "(1) regular *visitation and contact*, and (2) *a relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be

7

*detrimental* to the child." (*In re Caden C., supra*, 11 Cal.5th at pp. 629-631; see § 366.26, subd. (c)(1)(B)(i).)

As to the first element—regular visitation and contact—the Supreme Court stated that this is a "straightforward" analysis and the "question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.' " (*In re Caden C.*, *supra*, 11 Cal.5th at p. 632.)

"As to the second element, courts assess whether 'the child would benefit from continuing the relationship.' (§ 366.26, subd. (c)(1)(B)(i).) Again here, the focus is the child. And the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*In re Caden C.*, *supra*, 11 Cal.5th at p. 632; see *In re Autumn H.*, *supra*, 27 Cal.App.4th at p. 576.) "[C]ourts often consider how children feel about, interact with, look to, or talk about their parents." (*Caden C.*, at p. 632.)

"Concerning the third element—whether 'termination would be detrimental to the child due to' the relationship—the court must decide whether it would be harmful to the child to sever the relationship and choose adoption." (*Caden C.*, *supra*, 11 Cal.5th at p. 633; see § 366.26, subd. (c)(1)(B).) "What courts need to determine, therefore, is . . . what life would be like for the child in an adoptive home without the parent in the child's life." (*Caden C.*, at p. 633.) The court must perform a delicate balancing act. The "subtle, case-specific inquiry [that] the statute asks courts to perform [is]: does the benefit of placement in a new, adoptive home outweigh 'the harm [the child] would experience

8

from the loss of [a] significant, positive, emotional relationship with [the parent?]' "
(*Ibid.*) "When the relationship with a parent is so important to the child that the security
and stability of a new home wouldn't outweigh its loss, termination would be
'detrimental to the child *due to*' the child's beneficial relationship with a parent." (*Id.* at
pp. 633-634.)

In *Caden C.*, the Court also established a hybrid standard of review for the
beneficial parent-child relationship exception.[4] The first two elements, which require the
juvenile court to "make a series of factual determinations" regarding visitation and the
parent-child relationship, "are properly reviewed for substantial evidence." (*Caden C.,
supra*, 11 Cal.5th at p. 640.) But, "the ultimate decision—whether termination of
parental rights would be detrimental to the child due to the child's relationship with his
parent—is discretionary and properly reviewed for abuse of discretion." (*Ibid.*)

3.     *Analysis*

The record amply supports the juvenile court's conclusion that the beneficial
parent-child relationship exception did not apply, as mother did not satisfy even the first
prong, regarding regular visitation. Mother contacted the social worker on September 20,
2021, and said she was unable to visit the child until after September 27, 2021, because
she did not have any money for transportation. However, by this time, it had already
been over *two months* since mother last visited the child in person and the record of video

---

[4] Mother asserts that the appellate courts are essentially split on the standard of
review. This was a correct statement pre-*Caden C.* However, our Supreme Court held in
that case that the appropriate standard of review for this particular statutory exception is a
hybrid one. (*In re Caden C.*, *supra*, 11 Cal.5th at p. 640.)

visitation is sparse at best. Because CFS had historically provided mother with monthly bus passes and "BV Link Tickets" to assist with transportation to court, visits, and case plan services, presumably mother was aware that she could have asked for assistance from the social worker if she had difficulty obtaining transportation to and from the visits. However, when the social worker spoke to mother on September 3, 2021, to try to arrange visitation, mother did not say anything about financial challenges or transportation difficulties. Instead, she told the social worker, "my schedule is busy," and "I will contact you on Monday" to schedule a visit with the child.

We are mindful that someone tested positive for COVID-19 at mother's homeless facility in mid-August and the facility subsequently went on lockdown and quarantine. We are also aware that the caregiver's sister tested positive for COVID-19 during this time. Obviously, these were factors beyond mother's control. However, as of August 12, 2021, when she advised the social worker of the COVID-19-related issues, it had already been most of a month since her last visit. There is also no evidence that mother availed herself of video visits after August 12, 2021. Mother told the social worker on August 30, 2021, that she had "not visited" with L.C.

We reject mother's argument in her reply brief that instead of the parent's record of visitation, the "focus has to be on the benefit the child has in continuing the relationship with his or her parent." The parent must prove that he or she had regular visitation and contact with the child to satisfy the first prong of the beneficial parent-child relationship exception. (*In re Caden C.*, *supra*, 11 Cal.5th at pp. 629-631; § 366.26, subd. (c)(1)(B)(i).) It is not the role of the appellate court to redraft an otherwise clear

10

and unambiguous statute.  (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [the statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, "[t]here is no need for judicial construction and a court may not indulge in it"].)

We also reject mother's argument, raised for the first time in her reply brief, that "missed visits due to a lack of money had a connection to the court not ordering a psychological evaluation for Mother at the early stages of the case."  First, by raising this issue for the first time in the reply brief, we may disregard the argument in its entirety. (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275-276 ["[w]e will not ordinarily consider issues raised for the first time in a reply brief"].)  Second, mother fails to expand upon this point any further and does not cite to any legal authority or the record to support this claim.  (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [" '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' "].)  Third, this is essentially a reasonable services argument and, therefore, mother has forfeited this argument by not only failing to raise the issue in the juvenile court but by previously failing to file an appeal or writ petition. (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452; *In re Tabitha W.* (2006) 143 Cal.App.4th 811, 817; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221].)  Finally, there is no evidence in this case that mother missed her visits as a result of the court not ordering a psychological evaluation much earlier in the case.

11

Because the juvenile court expressly found mother failed to visit consistently, and we find substantial evidence supports that finding, it is unnecessary to address mother's remaining arguments pertaining to the beneficial parent-child relationship exception. (§ 366.26, subd. (c)(1)(B)(i); see *In re Eli B.* (2022) 73 Cal.App.5th 1061, 1068 [unnecessary to address remaining elements where juvenile court's finding father did not prove regular visitation and contact was supported by substantial evidence].)

B. *Appellant Has No Standing to Make Assertions Pertaining to the Alleged Father*

Mother contends the juvenile court erred in finding the alleged father, T.R., was given adequate notice of the dependency proceedings and the court failed to afford him the protections of the Servicemembers' Civil Relief Act. We address each contention below and separately.[5]

1. *Alleged Due Process Violation*

Mother claims that the juvenile court erred in finding the alleged father was given good notice of the dependency proceedings. More specifically, she contends that the alleged father, T.R., was denied due process when he was not noticed of the dependency proceedings despite the court knowing where he was located. Notwithstanding the fact that mother has forfeited this argument by failing to raise it below, we agree with CFS's

---

[5] According to the table of contents in mother's opening brief, there are a total of two arguments: (1) the juvenile court erred in finding the parent-child exception to adoption did not apply; and (2) the juvenile court erred in finding father was given good notice of the dependency proceedings. However, under the second argument of mother's brief pertaining to the alleged notice violation, she also included an argument about the "Soldiers' and Sailors' Civil Relief Act of 1940." Pursuant to California Rules of Court, rule 8.204(a)(1)(B), each point must be stated under a separate heading or subheading summarizing the point.

argument that mother lacks standing to raise this contention. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [it is a fundamental rule of appellate law that a party is precluded from arguing on appeal any point not raised in the trial court]; *In re M.H.* (2016) 1 Cal.App.5th 699, 713-714 [forfeiture also applies to constitutional challenges].)

" 'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests. This is a matter of first party standing.' [Citation.] In the absence of such intertwined interests, 'a parent is precluded from raising issues on appeal which did not affect his or her own rights.' " (*In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193.)

*In re Caitlin B.*, *supra*, 78 Cal.App.4th at p. 1190, a case cited by CFS, is directly on point and adverse to mother. In that case, the court held that a mother challenging an order terminating the parental rights of both herself and the child's alleged fathers lacked standing to contend the alleged fathers failed to receive proper notice of the section 366.26 hearing. "[A]ppellant's interest is limited to continuation or termination of her own parental rights. . . . Thus, she has no interest in asserting either [an alleged father's] statutory right to a particular form of notice or his more generalized due process right to be heard, both of which are personal to him as they relate to his parental rights." (*Caitlin B.*, at pp. 1191-1194.) Thus, as in *In re Caitlin B.*, mother's and T.R.'s interests do not interweave in such a way as to give her standing to raise the notice issue.

In *Caitlin B.*, as here, the mother further argued she was prejudiced by the failure to give the alleged fathers adequate notice because under former rule 1463(a) of the Rules of Court (now rule 5.725(a)(2)), " '[t]he court may not terminate the rights of only one

13

parent under section 366.26 . . . ." (*In re Caitlin B.*, *supra*, 78 Cal.App.4th at p. 1194.)

The *Caitlin B.* court rejected this claim. "The rule merely requires that termination of

both parents' rights occur in a single proceeding. [Citation.] That was done here. The

rule was never intended to serve a terminated parent's interests in delaying termination.

The stated purpose of the requirement that both parents' rights be terminated in a single

proceeding 'is to free the dependent child for adoption.' (Cal. Rules of Court, rule

1463(g) [now rule 5.725(f)].) Nothing in the rule gives appellant the right to urge on

appeal that an error in terminating the father's rights redounds to her benefit so as to

make into error an errorless termination of *her* parental rights." (*Ibid*.) As in *Caitlin B.*,

the juvenile court terminated mother's and T.R.'s parental rights during the same hearing.

Therefore, her argument is unavailing.

2. *Servicemembers Civil Relief Act (SCRA)*

Mother claims that the juvenile court failed to afford the alleged father, T.R., the

protections of the "Soldiers' and Sailors' Civil Relief Act of 1940."[6] CFS did not

respond to this argument. We are not persuaded.

---

[6] In 2003, the Soldiers' and Sailors' Civil Relief Act of 1940 was amended and renamed the Servicemembers Civil Relief Act. (Pub.L. No. 108-109, § 1 (Dec. 19, 2003) 117 Stat. 2835, codified as amended at former 50 U.S.C. Appen. §§ 501-596 [now at 50 U.S.C. § 3901 et seq.].) The SCRA applies to any judicial proceeding in state court, except criminal proceedings. (50 U.S.C. § 3912(a) & (b).) Upon application, a military service member who is a party to a civil action is entitled to a stay of the proceedings for at least 90 days. (50 U.S.C. § 3932(b)(1).) The application must include a letter setting forth facts that show how "current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear" and "[a] letter . . . from the . . . commanding officer stating that the servicemember's current military duty prevents appearance and that military leave it not

*[footnote continued on next page]*

Again, mother did not raise this argument below; therefore, we deem it forfeited. " 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.' [Citation.] A party may not assert theories on appeal which were not raised in the trial court." (*In re C.M.* (2017) 15 Cal.App.5th 376, 385.) "Considering an issue for the first time on appeal is often unfair to the trial court, unjust to the opposing party, and contrary to judicial economy because it encourages the embedding of reversible error through silence in the trial court." (*In re M.H.*, *supra*, 1 Cal.App.5th at pp. 713-714.)

Furthermore, notwithstanding the issue being forfeited, we find that mother does not have standing to make this argument. (*In re Caitlin B.*, *supra*, 78 Cal.App.4th at pp. 1191-1194 [appellant's interest is limited to the continuation or termination of her own parental rights and not those of an alleged father's statutory rights that are personal to him as they relate to his own parental rights].)

---

authorized . . . at the time of the letter." (50 U.S.C. § 3932(b)(2)(A) & (B).) " 'The court must stay the proceeding for not less than 90 days' " upon such an application. (*In re A.R.* (2009) 170 Cal.App.4th 733, 742.) " 'The stay is required whenever there is a showing of how military duty materially affects a servicemember's ability to appear in the action supported by a letter from the servicemember's commanding officer.' " (*Ibid.*)

IV.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
                                                              J.


We concur:


FIELDS
            Acting P. J.


MENETREZ
                    J.